HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v. MARY A. FOWLER ET AL.

(Case No. 1197.)

1. DAMAGES — RAILWAY COMPANY.— Damages cannot be recovered for injuries alleged to have been received by an employee of a railroad company while in the performance of a service not within the scope of his duty, if his opportunity for observing the danger was equal to that of the company; nor is the company guilty of negligence if the performance of an unusually dangerous service was required for good reason, as for the safety of the passengers.

2. SAME — NEGLIGENCE.— It is a sufficient defense that the track, culverts, etc., were substantial and durable and supervised in their construction by competent engineers, so as to be able to withstand all ordinary storms in that locality; and the fact that the storm which caused the accident was of extraordinary and unprecedented violence did not render the company liable on the ground of negligence.

3. DAMAGES.— If the employee was in the midst of the storm, and had the opportunity to observe the degree of danger attending the performance of the service, damages cannot be recovered of the company on the ground that the latter knew the danger and the former did not.

APPEAL from Waller. Tried below before the Hon. Wm. H. Burkhart.

The statement of the case by appellant's brief, being admitted correct by appellees' counsel, is adopted as follows:

Jacob Frank Fowler, deceased, was an employee in the service of the appellant as yardmaster at Hempstead, Waller county, Texas, when, on the 3d day of December, A. D. 1875, he was ordered by his superior officer, the assistant superintendent, to "run to wreck on Union Hill" to get the passengers from a train which was disabled. In the execution of that order Fowler met with an accident which resulted in his death. His widow and minor children brought this suit to recover damages resulting to them as surviving widow and children. The trial in the court below resulted in a verdict and judgment for the plaintiffs in the sum of $14,000, i. e., $4,000 for the widow and $2,000 for each of the five minor children. The defendant prosecutes this appeal.

Plaintiffs alleged that Jacob Frank Fowler, deceased, was, on the 3d of December, A. D. 1875, in the service of the defendant in the capacity of yardmaster at Hempstead.

That his duties as yardmaster were special, and were to be performed within the limits of the depot yard, switches and railway grounds adjacent to the depot and station at that place.

That on that day a violent storm of wind and rain prevailed along the entire line of defendant's railway.

That the defendant's railway was defectively constructed, and its road-bed, culverts and bridges were insufficient to resist the action of said storm, and several culverts and bridges were washed away on its line, and its road-bed, etc., injured and rendered unsafe.

That a railway-train was thrown from the track and

wrecked north of Hempstead, and between Hempstead and Courtney.

That defendant's assistant superintendent at Houston, C. A. Burton, telegraphed said Fowler, deceased, "V. 3. Fowler and engineer. Run Hempstead to wreck on Union Hill and return regardless of all trains, 12. C. A. B. Fowler, get back as soon as you can. Want you to go and get the passengers from No. 2. C. A. B."

That, in obedience to said telegraphic order, Fowler immediately started to go to the wrecked train.

That about two miles north of Hempstead the engine on which Fowler was was precipitated into a ravine where a culvert had been washed away by the storm.

That Fowler was then and there injured, and of the injuries received died that same day.

That the defendant and its assistant superintendent was informed, and well knew the condition of the railway, track, culverts and bridges, and the extent of the damage thereto wrought by the storm, and Fowler was ignorant thereof.

That the defendant and its assistant superintendent, C. A. Burton, were guilty of gross and wanton negligence in sending said Fowler out over said railroad at the time and under the circumstances, whereby the death of the said Fowler was caused.

That the plaintiffs sustained damage in the sum of $30,000 by reason of the death.

The defendant answered by:

General demurrer.

Plea of "not guilty."

General denial.

Special answer averring:

That said Fowler was then and there in the service of the defendant, and in the discharge of the duties for which he was employed and paid.

That the defendant's railway, track, bridges and culverts were originally constructed, kept and maintained in good condition and repair, fit and proper for safely conducting its business as common carriers of freight and passengers.

That the particular culvert which was so washed out was a stone culvert, well built and skillfully constructed, and was kept and maintained in a good and secure condition.

That at the time of the happening of the accident a rain storm of unusual severity was and had been prevailing, deluging the earth with water, converting ditches, drains, branches and streams into rushing torrents, and by reason thereof the said culvert was undermined and washed out.

That the said passenger train No. 2 was on the same day disabled, impeded and delayed in the neighborhood of Hempstead, and required assistance, and the said Fowler was ordered to its relief.

That in accordance with the rules and regulations of the defendant railway company, well known to Fowler, and in view of which he entered and remained in defendant's service, the execution of said order was an obligation which he owed as a matter of duty.

That the death of said Fowler was the result of a casualty incident to the service in which he was engaged, and this defendant is not responsible therefor.

The evidence was to the effect that Fowler was an experienced hand and had as good opportunity to know the danger as the company, he being at Hempstead in the midst of the storm, and the assistant superintendent at Houston; that both were ignorant of the danger. That the culvert had been constructed in a durable and workmanlike manner, under the supervision of competent engineers, and so as to resist all ordinary storms.

---

Opinion of the court.

---

*Geo. Goldthwaite*, for appellant.

*Breedlove & Ewing*, for appellees.

I. One contracting to perform labor, or to render service, thereby takes upon himself such risks, and only such, as are necessarily and usually incident to the employment. 44 Cal., 187; 13 Am. Rep., 163 and note; Wood on Master and Servant, sec. 326.

II. If the master has knowledge that the particular employment, or the particular service, is, from extraneous causes, hazardous or dangerous to a degree beyond what it fairly imports, or is fairly understood to be, he is bound to inform the servant of the fact; and if he fails to do so he is liable to such damages as the servant sustains by reason of such causes. 44 Cal., 187; 25 Ala., 659; 73 N. Y., 38; 52 Ill., 401; 13 Am. Rep., 163–4 and note; 29 Am. Rep., 97; 4 id., 616.

III. If the injury resulted from exposure to extraordinary risks, which were known to the master and unknown to Fowler, then the master is liable for all damages sustained by Fowler. 45 Ill., 201; Wood on Master and Servant, secs. 326, 336, 356, 364, 368, 387–8.

IV. The master is bound to warn the servant of latent dangers, and is bound not to expose the servant to dangers of which he knows, or has reason to know, the servant is not aware. Wood on Master and Servant, secs. 349, 352, 3, 4 and 5; 45 Ill., 201.

BONNER, ASSOCIATE JUSTICE.—I. One of the grounds upon which the plaintiffs below, Mrs. Mary A. Fowler and her children, seek to recover in this case is, that the deceased husband and father, Jacob F. Fowler, came to his death in the attempt to execute an order issued to him by C. A. Burton, as assistant superintendent of the defendant company, to perform a dangerous duty, not

within the scope of the employment of Fowler as yard-master.

Mr. Thompson, in his work on Negligence, thus states the rule in such cases:

"Where the master orders the servant into a service which he did not undertake to perform, and while in such service the servant is injured, his right to recover damages of the master may depend upon a variety of considerations. The master will not be liable for any injuries resulting to the servant from causes open to the observation of the servant and which it requires no special skill or training to foresee will be likely to occasion him harm, although he was at the time engaged in the performance of a service which he had not contracted to render. When a servant of mature years undertakes any labor outside the duties he has engaged to perform, the risks incident to which were equally open to the observation of himself and the master, the servant takes upon himself all such risks. Such a voluntary deviation from the original contract of service, entered into with full knowledge of the new risks assumed, ought, on principle, to be looked upon as a new contract of service," etc. 2 Thompson on Negligence, 976, § 7.

Mr. Pierce, in his late work on Railroads, in treating of the subject of the detail of a servant for a dangerous duty outside of his employment, says that it would not be negligence to put a servant to a service of more than usual danger, when required for a good reason, as for the safety of passengers. Pierce on Railroads, 378-9.

But as a question of fact, the uncontradicted testimony shows that the service required of Fowler devolved upon him as an employee of the company, and that he was subject to the orders of Burton, the assistant superintendent.

Upon this issue, at least, it is the individual opinion of the writer, that there was such failure of testimony

on the part of the plaintiff that the court should have withdrawn it from the jury.

II. The other ground upon which the plaintiffs seek to recover is, that the defendant's railway, where the accident occurred, was so defectively constructed that it was insufficient to resist the rain-storm which caused the injury; and that this defect was well known to Burton, the assistant superintendent who issued the order, and was not known to the deceased.

This involves two questions: first, the duty of the defendant in the construction of the culvert and road-bed; second, the liability of the defendant for the injury to the deceased, if the defects, if any, were known to him.

*First.* It was the duty of the defendant to have so skillfully and substantially constructed the culvert and contiguous road-bed, in the first instance, and to have so maintained them afterwards, as to have avoided those dangers from rain-storms which could have been reasonably expected in that section of the country, and which could have been guarded against by skillful and competent engineers, taking into consideration the flow of water which might reasonably be expected at the particular locality and from the adjacent water-shed. If, however, the culvert and road-bed were thus properly constructed and kept in repair, and the damage thereto was occasioned by such an extraordinary rain-storm as could not have been reasonably anticipated and guarded against, as above stated, then the company would not have been guilty of such culpable negligence as would, on this ground, have made them liable in damages for the death of Fowler. R. R. Co. *v.* Parker, 50 Tex., 344; R. R. Co. *v.* Halloran, 53 Tex. 46; 2 Thompson on Negligence 985 (5); Pierce on Railroads, 370; Shearman & Redfield on Neg., § 445.

Mary Fowler and the other plaintiffs, in addition to the allegations in their petition, admit in this court in their

brief that the testimony "clearly shows the prevalence and violence of the storm, the long continuance of the storm, and the unprecedented quantity of water that had fallen," . . . and that the loss of Fowler's life "was the result of a protracted, unprecedented rainfall and storm;" and they base their right to recover upon the ground that this and the consequent damage to the road was well known to Burton and was not known to Fowler. Had this admission been made in the court below, then the contest on this branch of the case should have been confined to the single question whether these facts were known to Burton when he issued the order, and unknown to Fowler when he attempted to execute the same.

The evidence upon the question of construction shows that the culvert was constructed of stone, that it was built in the year 1866 or 1867, in a good and substantial manner, and was sufficient to carry off all ordinary rainfalls, and that no complaint had ever been made of it before. That it was fully examined within a week prior to the accident and was found to be in perfect order, and that a train had passed over it in safety but a short time previously. That the culvert itself was not injured, but that the damage was occasioned by reason of the water having cut in behind the wing-wall on the south side, and undermined the road-bed. That prior to the accident the road-bed at that place was in good condition and perfect order, and that no reasonable foresight could have anticipated and prevented the accident. The testimony further shows, in addition to the allegations in the petition, that on this part of the line of the road there was an extraordinary rain-storm — one of the witnesses describing it as a water-spout, the like of which he had never seen before.

The only evidence on the part of plaintiffs tending to prove that the defendants were guilty of negligence in the construction of their road, were the facts that the

accident happened by reason of the road-bed having been undermined by the water, and that the water was occasioned by an extraordinary storm. The mere fact that the accident happened was not of itself sufficient to entitle the plaintiffs to recover. Hutchinson on Carriers, § 799.

Whether the additional fact, that it happened by reason of an extraordinary rain-storm, was sufficient to make out such *prima facie* case as would cast the burden of proof upon the defendant to show that the culvert and road-bed were properly constructed, it is not necessary now to decide, but is left an open question, as in Railroad *v.* Dilahunty, 53 Tex., 212. We are all agreed, however, that if such *prima facie* case was made by the plaintiff, it was defeated by the testimony of the defendant.

*Second.* Were the plaintiffs entitled to recover on the last ground above stated, that the danger was known to Burton, the assistant superintendent, and not known to Fowler, the deceased?

The rule upon this subject is thus stated, in effect, by Mr. Pierce: That a servant who, before the injury, had knowledge of the defect in the road, or who, having a reasonable opportunity to inform himself, ought to have known such defects, is presumed by remaining in the company's service to have assumed the risk of such voluntary exposure of himself, and cannot recover for an injury resulting therefrom; and his knowledge has the same effect whether the company was informed or ignorant of such defect. He further says: This rule applies with special force when the defect or danger is obvious to the senses. Pierce on Railroads, 379, citing numerous authorities in notes; 2 Thompson on Negligence, 1008, § 15.

Construed in the most favorable light for the plaintiffs, the testimony as disclosed by the record would show that both Burton and Fowler were mutually ignorant of the

damage done to the road-bed and of the impending danger. The dispatch upon which Fowler acted was issued from the city of Houston, considerably distant from the scene of the accident. The testimony shows that Burton was not fully advised of the character of the rain-storm or the extent of the damage; but on the contrary, it was shown that Fowler was in the midst of the storm and at the place of the accident, and hence had the opportunity to see and know the extent of the rain, and that the service was attended with more or less danger. It further shows that the accident occurred in the day-time, about three o'clock in the afternoon, and that Fowler was a man of mature years and possessed of long experience and peculiar skill as a railroad man.

The testimony does not sustain the proposition that the danger was known to Burton and unknown to Fowler.

We are all agreed that the testimony does not sustain the verdict and judgment upon any of the issues, and that the sixth assigned error was well taken, that the court erred in overruling the motion for a new trial; for which error the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.