G., C. & S. F. R'y Co. v. L. Holliday.

(Case No. 2183)

1. PRACTICE—SUPREME COURT—APPEAL—BILLS OF EXCEPTION—It is the duty of a party bringing a cause to the supreme court to see to its proper preparation for an appeal, and where the record does not disclose that it was through the fault of the trial judge or of the opposite party that appellant's bills of exception were not filed within the time prescribed by law, the presumption as to negligence is against the appellant, and he cannot complain if his bills are not legally before the appellate court.

2. EVIDENCE—RAILROADS—OVERFLOWS — FRESHETS — EVIDENCE OF FRESHET SUBSEQUENT AND EQUAL ·TO ONE CAUSING DAMAGE COMPLAINED OF, WHEN ADMISSIBLE—Where, in a suit against a railway company for damages from overflow of

land, caused by improper construction of the company's road, the defendant has pleaded that the overflow was the result of an extraordinary and unusual flood, against which human foresight could not provide, and evidence has been introduced of freshets having occurred at different intervals for a series of years prior to the one by which the plaintiff was damaged, which were equal to it, evidence of a freshet in the year following that in which the damage complained of occurred, greater than the one which caused such damage, is admissible, in connection with the proof relating to previous overflows, as a. circumstance tending to show that the flood causing the damage to the plaintiff was an occurrence against which ordinary and reasonable care might have: provided. (Citing Mayor v. Baily, 2 Denio 441, and Gray v. Harris, 107 Mass.. 494.)

3. SAME—INTRODUCTION LARGELY IN DISCRETION OF TRIAL JUDGE—DEFECTS IN PROOF MAY BE SUPPLIED AT ANY TIME BEFORE CONCLUSION OF ARGUMENT—CONFIRMATORY OF PRIMA FACIE CASE—REVISED STATUTES, ART. 1298—The Revised Statutes, art. 1298, leave it largely within the discretion of the trial judge as to the admission of testimony, and defects in proof may be supplied at any time before the conclusion of the argument. And where the testimony is confirmatory of the *prima facie* case already made by the party offering it, and fortifies the case upon points wherein it has been attacked, a refusal to admit it has been held to be error. (Citing Markham v. Caruthers, 47 Tex. 21.)

4. RAILROADS—PROPER CARE IN CONSTRUCTING NOT TO OBSTRUCT WATERS OF ORDINARY FLOODS—ADJACENT LANDS—REVISED STATUTES, ART. 4171—By the Revised Statutes, art. 4171, railway companies are required, in constructing their roads, to take into consideration the natural lay of the land, and to construct culverts and sluices necessary for its proper drainage. In this respect they must use proper care, so as not to obstruct the waters of ordinary floods, to the damage of adjacent lands. (Citing I. & G. N. R'y Co. v. Parker, 50 Tex. 242, and G., C. & S. F. R'y Co. v. Helsley, 62 Tex. 594.)

5. SAME — WHAT NECESSARY TO CONSIDER IN CONSTRUCTING — NEED NOT PROVIDE AGAINST UNPRECEDENTED FRESHETS—The use of such care as a prudent man would exercise in reference to his own affairs, requires that a railway company, in the construction of its road, take into account the probabilities of overflows; and, in estimating these, it must consider what effect the size and length of the river near which it is building may have in producing them, as well as the number and frequency of former freshets. The railway company may not be required to provide against an unprecedented rise in the river, but that cannot be called unprecedented which has, for more than a quarter of a century, occurred every three, four or five years; nor can that be called extraordinary which is but the natural result of the length and size of the river, taken in connection with a fall of water liable to occur at intervals, though separated from each other by several years.

6. SAME—DESTRUCTION OF CROP BY OVERFLOW—MEASURE OF DAMAGES—INTEREST NECESSARILY AN INGREDIENT—When one's crop has been destroyed by overflow caused by the improper construction of a railway, the injured party, as far as money can do so, ought to be put in the same condition that he would have been had the tort not been committed; and interest upon the value of the crop so destroyed, from the date of its destruction, is as necessary as the value itself. (Citing 1 Suth. on Damages, 174; Wallace v. Finberg, 46 Tex. 85; Blum v. Merchant, 58 Tex. 400; Ingram v. Rankin, 47 Wis. 406, and other authorities.)

7. DESTRUCTION OF CROPS BY OVERFLOW—DAMAGES—WHAT TOO UNCERTAIN TO CONSIDER IN REDUCTION OF—What a plaintiff, whose crop has been destroyed by

overflow, might have made had he planted another crop, is too uncertain to base upon it any estimate as to the amount by which his damages should be reduced

8. RAILROADS—DUTY TO PROVIDE AGAINST WATER COMING FROM A GREAT DISTANCE—EXTRAORDINARY FRESHETS—QUESTIONS OF FACT FOR A JURY—CHARGES REFUSED—See this case for special charges asked, which were held to have been properly refused, because they assumed as matter of law, that a railway company is excused for having failed to construct its road-bed, culverts and ditches in such manner as to afford free passage and egress to water coming from a large river and from a great distance; and because they assumed as matter of law that a particular freshet was an extraordinary one.

APPEAL from Brazos.   Tried below before the Hon. W. E. Collard.

Plaintiff, L. Holliday, brought this suit against the defendant, the Gulf, Colorado and Santa Fe railway company, for damages for the destruction of his crops of corn and cotton in the spring of 1884, grown by him in the Brazos bottom, on land situated near the railroad, and near where the road crosses the Brazos river.

Plaintiff alleged that the railroad was constructed a short distance below his farm, by defendant, in such an unskillful manner that the natural channels for the escape of water flowing out of the Brazos river above the railroad were dammed up, that a rise occurred in the Brazos river in the spring of 1884, and that the water flowed out of the river, at low places in the banks, above the railroad, down to the road, and was there dammed up by the defendant's embankment, thereby overflowing and destroying thirty acres of cotton then growing and being raised by plaintiff, of the reasonable value of $20.00 per acre.

Defendant traversed the allegations of plaintiff, as to the unskillful construction of the road-bed, and alleged that the damage to plaintiff's crops was caused by an extraordinary flood in the Brazos river, for which defendant was not responsible.   Defendant also demurred and pleaded general denial.

The case was tried before a jury at the September term, 1885, and resulted in a verdict in favor of plaintiff for $300.

From the Brazos river, where the railroad crosses it, to Allen farm, or Jarrell's, is three and one-quarter miles. The river bank at the bridge and the land at Allen farm are points elevated several feet above the intervening country.   The farm lies on the river, about one and one-quarter miles above the railroad bridge, and between the farm and the bridge there are several low places in the river bank, one of which is about six hundred yards long.   Before the railroad was built, high waters from the river passed over these low places into the natural depressions in the surface of the adjacent land, and thence into bayous and Elm flats, and escaped.

Before the railroad was built, the sloughs were "not sufficient, during a freshet in the river, to conduct the water off, but the sloughs flowed into Elm flats, which carried off the water." Through these low lands and sloughs, or bayous, defendant erected an embankment several feet high. In this space of three and one-quarter miles, from the bridge to Allen farm, defendant left one hundred and eight yards in openings for the escape of this volume of water. At one place across these low lands, there is no opening at all for a distance of one thousand yards, and the water coming into this space would accumulate and be thrown back on plaintiff's land, until about two or two and one-half feet deep, and then escape over the railroad embankment.

When the flood of 1884 occurred, the water passed out of the river through the low places in the banks into natural depressions, and thence down the railroad, where it was stopped and thrown back through the bottom on to plaintiff's land, submerging it. There was evidence that the river had been as high in 1852, 1853, 1867, 1868, and 1879 or 1880, as in this freshet. The natural channels and out-lets, before the construction of the railroad, afforded a sufficient escape for the water from the Brazos river overflowing its banks at low places below plaintiff's farm and above where the road was built. The railroad was built through that section about 1881-2.

In constructing the road, an embankment was thrown up from the river back toward Allen farm. Near the river it extended across an Elm flat, into which sloughs emptied, which conveyed water overflowing low places in the banks of the river, below plaintiff's farm and above the bridge. For some distance from Allen farm, in the direction of the river, the railroad embankment was only slightly elevated above the general level of the surrounding country, but where it crossed sloughs, and as it approached the bridge across the river, it varied from six to nine feet in height.

Some of the sloughs that formerly afforded escapes for the water were entirely dammed up, no culverts or passages being constructed. The large slough, in its natural state, was forty-five steps across, but it was dammed by the railway embankment, which contained a culvert sixteen steps in diameter. Where the natural slough was dammed in two places, a ditch was cut by the road to connect the slough, so as to carry off the water, but it had not the capacity of the slough. The country on both sides of the railroad was on a general level. The railroad was down the river from plaintiff's farm, his farm being north of the road.

The effect of the construction of the railroad and the embankments

built was to dam up the water coming out of the river above the rail-road, and to cause it to flow back north on plaintiff's farm. The water rose on the north side of the track until it got high enough to pour over the railroad track. This part of piaintiff's land had not been overflowed in previous years. The water stood on plaintiff's crop five or six days, and destroyed it. The crop destroyed was worth from $15 to $20 per acre. The evidence showed that the water which over-flowed plaintiff's land came out of the Brazos river from a general rise in the river, and not from local streams or surface water from local rains.

One of the plaintiff's witnesses, M. R. Millican, stated, on cross-examination by the defendant, that the water in the Brazos river was, in 1884, higher than he had ever seen it before; that he would call it an unusual rise.

On redirect-examination, he was asked by the plaintiff how the over-flow of 1885 compared with that of 1884, and, over defendant's objec-tion to the effect that this suit was for damages caused by the overflow of 1884, and that defendant in constructing its road could only look to what had already occurred, and could have no knowl-edge of events subsequently occurring, he stated that it was higher than that of 1884. The plaintiff also introduced other witnesses, who, over the objection of the defendant, testified to the same effect. Several witnesses had previously testified that many large freshets had occurred in the Brazos river, at intervals of three or four years, between 1852 and 1884, some of which were equal to, if not greater than, the one causing the damage to plaintiff. To the court's ruling, admitting the testimony of plaintiff's witnesses as to the character of the overflow of 1885, the defendant excepted.

After the defendant had rested, the plaintiff introduced as a wit-ness J. B. Thomas, who, over the defendant's objection that the testimony was not in rebuttal of anything testified to by its witnesses, but was only a part of plaintiff's *prima facie* case, testified as to the topography of the country in the vicinity of the plaintiff's premises alleged to have been overflowed, and also as to the character and manner of the construction of defendant's road, and its effect upon the flow of the water in that vicinity. There had, however, it ap-pears from the record, been other testimony on these points by witnesses previously introduced by both parties. To the ruling of the court, in admitting the testimony of this witness, the defendant also excepted.

The special charges asked by the defendant and refused by the court, the refusal of which were assigned as error, were as follows:

"1. The law only imposes on railroad companies, in the construction of their roads, the obligation to provide sufficient culverts and openings therein to pass off and allow a free flow to the surface water of the adjacent country, arising from rains and local streams, and to construct bridges and culverts over the streams which their roads cross, of sufficient capacity to carry off the water flowing down such streams; but they are not bound to provide openings in their roads of sufficient capacity to pass through their embankments large floods of water flowing over the banks of great rivers, and coming for a great number of miles above their road."

"2. The fact that a flood of extraordinary height has occurred once or twice, or even oftener, does not necessarily take from such flood its character as an act of God, or as an extraordinary occurrence; but, if it is of such character that it cannot be expected to recur with such frequency as would cause practical men, of ordinary care and caution, to attempt to guard against it, then it would retain the character of being an extraordinary flood, against which defendant would not be required to provide."

The defendant also asked of the court the following special charge on the measure of damages: "If the jury believe, from the evidence, that plaintiff could, by the use of reasonable efforts, have raised a crop on the same land, then he can, in any case, only recover what would have been the cost of replanting and the amount which would have been the difference between the value of the crop destroyed and the replanted crop."

The court refused this charge also, and, instead, instructed the jury as follows: "If plaintiff's crop was wholly destroyed by the negligence of defendant, as alleged, the measure of damages will be the market value of the crop so destroyed, at the time and place of its destruction, and eight per cent. interest per annum thereon to date; but if the crop was only partially injured by such negligence, you will value the injury and find for plaintiff such value, with eight per cent. interest per annum thereon to date."

This last charge and the court's refusal to grant the one on the question of damages, asked by defendant, were likewise assigned as error.

Defendant's bills of exception were presented to the trial judge, and by him approved, during the term of the court at which the cause was tried, but, for some reason not disclosed, they were not filed until after the term had expired.

Judgment was rendered on the verdict, and the defendant appealed.

*Ballinger, Mott & Terry* and *Taliaferro & Gould,* for appellant, on the

questions discussed in the opinion, cited: G., C. & S. F. R'y v. Hels-
ley, 62 Tex. 593; Taylor v. Fickas, 64 Ind. 167; C. & V. N. R'y v. Ste-
vens, 73 Ind. 278; O'Connor v. Fon du Lac R'y, 52 Wis. 526; Hoyt v.
City of Hudson, 27 Wis. 656; Abbott v. K. C., St. J. & C. B. R'y (Sup.
Ct. Mo.), 20 Am. and Eng. R'y Cases, 103, and authorities cited in
note; K. C. & E. R. R'y v. Riley (Sup. Ct. Kan.), Id. 116, and note;
C. & A. R'y Co. v. Benson (Sup. Ct. Mo.), Id. 96; Am. and Eng. R'y
Cases, note to 573; I. & G. N. R'y v. Parker, 50 Tex. 342; I. & G. N.
R'y v. Halloren, 53 Tex. 46; N. P. & O. Co. v. Dock Co., L. R., 9 ch.,
div. 503; P. F. & W. R'y Co. v. Gilleland, 56 Penn. St. 445; Bellin-
ger v. N. Y. C. R'y Co., 23 N.Y. 42; B. & O. R'y Co. v. School Dis-
trict, 2 Am. and Eng. R'y Cases, 166; Brandon v. Mfg. Co., 51 Tex.
128; Sedg. on Damages, marginal, 64; Field on Damages, 21, et seq;
T. & St. L. R'y v. Young, 60 Tex. 201; R. S., arts. 1363, 1364, 1365.

*Henderson & Butler* and *Spencer Ford*, for appellee, on the questions
discussed in the opinion, cited: R. S., arts. 1363, 1364; Dist. Ct.
Rule, 60; Sup. Com. Knights Golden Rule v. Rose, 62 Tex. 321; S. &
E. T. R'y Co. v. Joachimi, 58 Tex. 452; R. S., art. 1298; Markham
v. Caruthers, 47 Tex. 21; Connor v. McLeon, Tex. Law Rev., vol. 5,
p. 469; I. & G. N. R'y Co. v. Parker, 50 Tex. 342; The Mayor v.
Baily, 2 Denio 441; Gray v. Harris, 9 Am. Rep. 63; G., C. & S. F.
R'y Co. v. Donahue, 59 Tex. 131; G., C. & S. F. R'y Co. v. Helsey, 62
Tex. 594; Gray v. Harris, 107 Mass. 462; S. & E. T. R'y Co. v. Joa-
chimi, 58 Tex. 460; Ft. W. & D. R'y v. Scott, 2 Wilson's Cases 137.

WILLIE, CHIEF JUSTICE.—The appellant complains that the district
judge who tried this case, did not cause its two bills of exceptions to
be filed during term time and within ten days after the conclusion of
the trial.    They were presented and approved in due time, and, if
they were not duly filed, the appellant must be held responsible; for
it is the duty of the party bringing a case to this court to see to its
proper preparation for an appeal.    The record does not disclose that
it was through the fault of the judge or of the appellee that the bills
were not filed, and we have no other evidence to this effect.    The
presumption as to negligence is, therefore, against the railway com-
pany, and it cannot complain if these bills of exceptions are not
legally before this court.

Admitting, however, that the bills are in such shape that we can
consider them, we think the exceptions reserved by them are not
well taken.    The evidence of Millican and Parker, to the effect that
the rise in the Brazos river in 1885 was greater than in 1884, was

admissible as a circumstance, which, taken in connection with the proof as to previous overflows, tended to show that the flood of 1884 was an occurrence against which ordinary and reasonable care would have provided.    Mayor *v.* Bailey, 2 Denio 441; Gray *v.* Harris, 107 Mass. 494.

The defendant had pleaded that the overflow of 1884 was an extraordinary and unusual flood, and one against which human foresight could not make preparation.    To meet this plea the plaintiff introduced evidence of freshets occurring at different intervals for a series of years previous to 1884.    Some of these were as great, if not greater than the one by which the plaintiff was damaged.    This was proof that such rises in the river were liable to occur at any time.    They were to be regarded as ordinary, because well known to take place in the stream occasionally through a period of years, although at no regular intervals.    Gould on Waters, sec. 211*c.*    And, as strengthening the proof of their ordinary character, it was proper to show that they still continued to occur, and that the habit of the river in this respect had not changed since former freshets.    If this had been the only proof as to overflows in the river, it would have been inadmissible, but, following proof of former rises, it tended to show a continued liability of the river to such freshets at and about the time the railway was constructed through the bottom.

The evidence of Thomas was admissible.    Our Revised Statutes leave it largely within the discretion of the trial judge as to the admission of testimony, and defects in proof may be supplied at any time before the conclusion of the argument.    R. S., art. 1298.

Thomas' testimony was confirmatory of the *prima facie* case already made by the plaintiff, and fortified it upon points wherein it had been attacked by the defendant's witnesses.    This court has reversed a judgment below for a failure of the judge to admit such evidence. Markham *v.* Caruthers, 47 Tex. 21.    Besides, it seems that proof as to the topography of the country where the injury occurred was opened by the defendant, and Thomas' evidence was strictly in rebuttal of this proof.

There was no error in the charge complained of in the third assignment of error, nor was there error in refusing the third special charge asked by the appellant.    Railway companies are required by our statutes, in constructing their roads, to take into consideration the natural lay of the land, and to construct the necessary culverts or sluices for its necessary drainage.    R. S., art. 4171.    That they must use proper care in this respect, so as not to obstruct the waters of ordinary floods to the damage of adjacent lands, is settled by the

decisions of this court.  I. & G. N. R'y Co. *v.* Parker, 50 Tex. 342 ; G., C. & S. F. R'y Co. *v.* Helsley, 62 Tex. 594.

The use of such care as a prudent man would exercise in reference to his own affairs requires that they take into account the probabilities of overflows, and, in estimating these, they must consider what effect the size and length of the river near which they are building may have in producing them, as well as the number and frequency of former floods.  They may not be required to provide against an unprecedented rise in the river, but that can not be called unprecedented which has occurred every three, four or five years for more than a quarter of a century, nor can that be called extraordinary which is but the natural result of the length and size of the river, taken in connection with a fall of water liable to occur at intervals, though separated by several years from each other.  As it was not a matter of law that a railway company is excused for failing to construct its road-bed, culverts and ditches in such manner as to afford free passage and egress to water, because it comes from a large river and from a great distance, the court was not authorized to so charge the jury.  The questions submitted to the jury were:  Has the company constructed its road and waterways with proper care and diligence, taking into consideration the liability of the country to overflows, and so as to guard the adjacent land from damage to the same extent as it was previously protected?  Was the flood which caused the damage to the plaintiff one to which that vicinity was liable, or was it an extraordinary freshet, which could not be foreseen or anticipated?  As to what effect the facts before the jury might have in determining these questions, it was for them to determine. They could take the length and size of the river into consideration, the topography of the country, the frequency of former floods, the manner in which the road was built, and the sluices and culverts constructed.  From these and other facts before them they could answer the court's questions, and thus determine for themselves whether the damage was owing to the negligence of the railway company or not.  The question of negligence was for the jury to determine, but the charge asked by the appellant would have taken its main and essential ingredient in the present case from them, and had it passed upon by the court.

The question of whether or not the flood of 1884 was an extraordinary one being for the jury, the court properly refused to give the sixth special charge asked by the appellant, made the subject of the seventh assignment of error.

The court's charge as to the measure of damages did not prejudice

the case of the appellant. The jury found no interest except from the date of the verdict. The minimum value of the crop destroyed, as proven by the evidence, was greater than the amount of damages assessed by the jury. The charge, too, would seem to be correct. "The injured party ought to be put in the same condition, so far as money can do it, in which he would have been if the tort had not been committed." 1 Suth. on Damages, 174. "Interest is as necessary to the complete indemnity as the value itself." Ib.; Ingram *v.* Rankin, 47 Wis. 406 ; McCormick *v.* Penn. Cent. R'y Co., 49 N.Y. 303 ; Hamer *v.* Hathaway, 33 Col. 117 ; Wallace *v.* Finberg, 46 Tex. 35 ; Blum *v.* Merchant, 58 Tex. 400. The question as to damages before the jury was : What was the value of the crop growing upon the land at the time it was destroyed by the flood? This was what the plaintiff lost, and the value of it, if paid to him at the time of the loss, would have afforded him compensation. Had it been shown that he would have been able, by reasonable diligence, to save a portion of the crop from the flood, or to sell it in its damaged condition, there might have been some reason for giving the fifth special charge asked by the appellant. But what he might have made, had he planted and cultivated another crop, was too uncertain to base upon it any estimate as to the amount by which his damages should be reduced. It was not allowable for the plaintiff to claim as damages what his destroyed cotton would have produced had it survived till harvest time, and, upon the same principle, his adversary could not compel him to reduce his damages by the supposed value of such contingent profits. Besides, the fact that other persons in the neighborhood raised crops after their first planting had been destroyed, furnished no criterion to determine what he could have made, when the value of their crops and the expense of raising them was not shown. Moreover, it was proved by uncontradicted evidence that the overflow left the plaintiff's land in such condition that it could not be replanted in time for another crop.

The ninth assignment of error is but a grouping together of various matters of fact which, it is alleged, the jury should have found for the appellant, instead of the appellee. There was evidence to support the jury's finding upon all these points, and it can not, therefore, be disturbed.

The tenth assignment of error is too general to demand consideration.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered February 19, 1886.]