FORT WORTH & DENVER CITY RAILWAY COMPANY V. W. H. KIEL.

No. A-436. Decided April 25, 1945.
Rehearing overruled May 23, 1945.
(187 S. W., 2d Series, 371.)

*Barwise & Barwise,* of Fort Worth, and *Carrigan, Hoffman & Carrigan,* of Wichita Falls, for petitioner.

It was error for the Court of Civil Appeals to hold that the trial court properly overruled appellant's motion for judgment on the ground that there was no evidence in the case to raise the issue of the unprecedented nature of the flood. Gulf C. & S. F. Ry. Co: v. Holliday, 65 Texas 519; Mistrot-Callahan Co. v Missouri, K. & T. Ry. Co., 209 S. W. 775; 30 Tex. Jur. 720.

*Napier & Napier,* of Wichita Falls, for respondent.

On the proposition that it was the duty of the railroad company to provide an opening in its enbankment that would take care of the ordinary flood waters of the creek, cited: Gulf, C. & S. F. Ry. Co. v. Pool, 8 S. W. 535; Soules v. Northern Pac. Ry. Co., 34 N. D. 7, 157 N. W. 823.

MR. JUSTICE.SHARP delivered the opinion of the Court.

W. H. Keil filed this suit against the Fort Worth & Denver City Railway Company for damage to his swimming pool which was located near a small creek. The tracks of the Railway Company crossed the creek a short distance below the swimming pool, and they were laid upon an embankment across the creek, There was a culvert in the embankment where it crossed the creek. It was urged that the embankment backed flood waters against the concrete wall of the swimming pool, which caused the wall of the swimming pool to cave in. The suit for damages to the swimming pool was based on the theory that the cul-

vert was too small to carry off the flood waters. Despite the answers of the jury to special issues, the trial court upon motion of the plaintiff for judgment entered judgment non obstante veredicto for $1,472.50 in favor of plaintiff against the Railway Company, and the Court of Civil Appeals affirmed that judgment. 185 S. W. (2d) 144.

In answer to special issues the jury found:

(1) That the Railway Company failed to construct the necessary culvert or culverts required for the necessary drainage of the land.

(2) That such failure was the proximate cause of the injury to the swimming pool.

(3) That such failure was not negligence.

(4) That the Railway Company failed to maintain an adequate culvert immediately before said injury; that such failure was negligence; and that such failure was the proximate cause of the injury to the swimming pool.

(5) That the flood which occurred during October 1941 was unprecedented.

(6) That the concrete highway was a contributing and proximate cause of plaintiff's damage.

(7) That the plaintiff's property would not have been damaged "regardless of the existence of the defendant's roadbed and culvert."

(8) That if there had been no roadbed or culvert below the premises of plaintiff during the flood of October, 1941, the flood waters would not have inundated his property.

(9) That the bridge under defendant's tracks below the premises of plaintiff was sufficient to take care of the natural and ordinary flow of water down Pond Creek.

(10) That the wall along the west side of plaintiff's swimming pool was improperly constructed, and that said wall would not have fallen if it had been properly constructed.

The Railway Company in the Court of Civil Appeals contended, (1) that it should have had an instructed verdict, on the ground that the undisputed proof showed that the damage was caused by an unprecedented flood, and (2) that it should have had a judgment on the verdict, because the jury found that the flood was unprecedented. The Court of Civil Appeals overruled both points, "on the ground that there was no competent evidence to show that the flood was unprecedented."

Petitioner contends that the Court of Civil Appeals erred in holding that there was no evidence to show that the flood was unprecedented. This is the point on which this Court granted a writ of error. Regarding this point the controlling facts are as follows: The flood occurred in Pond Creek, which is a small stream with a channel about ten feet wide. It is a rather crooked creek, with many turns and twists, and runs back about three miles. The wall surrounding the swimming pool was finished in 1924, and the flood in question occurred in 1941. Kiel lived about a mile and a quarter from the swimming pool for fourteen years before he moved to his house near the swimming pool. He testified that there was a flood in 1938 which lacked six inches or more of being as high as the flood of 1941; that it did not damage the swimming pool; that since he had been living near the swimming pool he had not seen the water as high as it was in 1941.

We quote from the testimony of the witness Gilstrap, taken from the record, as follows:

"Q. Tell us about that flood out there.

"A. Along about that time we had some very wet weather. The creeks were all out of the banks, some of them higher they claim than they had been in 50 years, but I do not know whether it was this particular one or not."

L. E. Brooks testified that he was in charge of a State experimental farm, located six or seven miles from the swimming pool; that he had kept a record at the experimental farm for fifteen years; and that this farm lay in another watershed. We quote from his testimony, taken from the record, as follows:

"Q. What does your record show the annual rainfall to be?

"A. I don't have that record with me, but in the eighteen years we have been recording rainfall at the station the average is 31 inches plus; I don't remember the exact fraction.

"Q. In October, 1941, what was the total rainfall?

"A. The total for October, 1941, was 16.62 inches.

"Q. For that month of October it was a little over half of the annual mean rainfall as recorded for the last eighteen years?

"A. Yes, sir."

No testimony was introduced showing that a flood of the height of this one had ever before occurred in that country within the memory of men then living.

■ We think the evidence, when considered in connection with all the facts and circumstances surrounding this case, raises the question of unprecedented flood, and it was proper to submit that issue to the jury. 1 Tex. Jur., p. 694, sec. 3.

In 1876 the Legislature enacted Article 6328, which reads:

"In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof."

The case of Gulf, C. & S. F. Ry. Co. v. Pomeroy, 67 Tex. 498, 3 S. W. 722, involved the construction of Article 6328, and this Court, speaking through Mr. Justice Gaines, said:

"The statute requires railroad companies, in constructing their embankments, to provide such culverts and sluices as may be demanded by the natural lay of the land for its necessary drainage. Rev. St. art. 4171. We construed this to mean that provision need not be made for such extraordinary floods as could not have reasonably been foreseen; but such as may have been reasonably anticipated must be guarded against, without reference to the frequency of their occurrence. Knowing that an extraordinary inundation has occurred more than once, and for that reason that it may occur again, a party who has constructed a work which obstructs its outflow, and causes it to submerge the property of another, to his damage, will not be permitted to defend against the wrong by setting up the fact that the floods not provided for have occurred only at long intervals."

■ If a structure placed over a stream does not obstruct the natural and ordinary flow of water of the stream, and an extraordinary and unprecedented flood occurs, of such a size as had not been known or heard of before, and which a person of ordinary care and prudence, under the circumstances, could not have foreseen or anticipated, no damage can be recovered for the

injury caused by the extraordinary and unprecedented flood. Houston & T. C. R. Co. v. Walsh (Tex. Civ. App.), 183 S. W. 18; Sabine & E. T. R. Co. v. Brousard, 69 Tex. 617, 7 S. W. 374; Gulf, C. & S. F. Ry. Co. v. Holliday, 65 Texas 512; International & G. N. R. Co. v. Halloren, 53 Texas 46, 37 Amer. Rep. 744; Houston & T. C. Ry. Co. v. Fowler, 56 Texas 452; Gulf, C. & S. F. Ry. Co. v. Pomeroy, supra.

■ The rule of nonliability of a railway company or person for damages caused by an extraordinary and unprecedented flood is subject to the exception that negligence in constructing and maintaining a structure, concurring with an extraordinary and unprecedented flood and causing damage to another, makes the railway company or person liable for damages, notwithstanding the fact that the flood was extraordinary and unprecedented. 1 Tex. Jur., p. 700, sec. 5, and cases cited in footnotes; see also 1 Tex. Jur., p. 703, sec. 8; Galveston, H. & S. A. Ry. Co. v. Riggs (Tex. Civ. App.), 107 S. W. 589, 591, id., 101 Tex. 522, 109 S. W. 864.

■ The jury found that the failure of the Railway Company to construct the necessary culvert or culverts required for the necessary drainage of the land was not negligence; that the Railway Company failed to maintain an adequate culvert immediately before said injury, and that such failure was negligence; that the bridge under the Railway Company's tracks below the premises of plaintiff was sufficient to take care of the natural and ordinary flow of water down Pond Creek; and that the flood in question was unprecedented. These findings are conflicting, and a judgment can not be sustained thereon for either party.

The judgments of the trial court and Court of Civil Appeals are reversed, and this cause is remanded to the trial court for a new trial.

Opinion delivered April 25, 1945.

Rehearing overruled May 23, 1945.