**LEWIS v. TEXAS & N. O. R. CO.**

**No. 2687.**

Court of Civil Appeals of Texas. Waco.
Dec. 12, 1946.

Rehearing Denied Jan. 30, 1947.

Dodson & Reagan, of Marlin, for appellant.

Sewell, Taylor, Morris & McGregor, of Houston, Bartlett & Bartlett, of Marlin, and Baker, Botts, Andrews & Walne, of Houston, for appellee.

HALE, Justice.

W. H. Lewis sued Texas & New Orleans Railroad Company for damages on account of injury to his rented land and prospective crops located in the valley of Cow Bayou in Falls County alleged to have resulted from flood waters flowing over appellee's embankment and railroad tracks. Plaintiff charged defendant with negligence in the following particulars, viz: (a) in failing to provide sufficient bridges, culverts and other drainage structures under its railroad tracks so as to allow the flood waters of Cow Bayou to pass freely under the same, in accordance with the requirements of Art. 6328 of Vernon's Tex.Civ. Stats.; (b) in filling in the tressel on each side of the main stream of Cow Bayou, thereby reducing the drainage area under said railway; and (c) in failing to remove from his land the rails, cross-ties and rocks washed thereon by such overflow, in time for plaintiff to have planted his land in cotton for the year 1945.

Defendant answered with a general denial and affirmative pleas of due diligence and proper skill and care on its part in the construction and maintenance of its right-of-way, embankment, tressel, bridge and other openings under its tracks for drainage purposes. It further alleged that the damages complained of resulted solely from an extraordinary and unprecedented flood of waters through Cow Bayou which it could not have reasonably anticipated, that such damages were thus caused by an "Act of God" and that the same would have been suffered by plaintiff even though there had been no railroad embankment in that vicinity and even though defendant had made none of the changes in its drainage structures as complained of by plaintiff.

The case was tried before a jury. Upon the conclusion of all the testimony defendant seasonably presented an extensive motion for a peremptory instruction in its behalf based upon sixteen specific grounds, the substance thereof being that the evidence as a whole did not tender any controlling issue of fact for determination. Thereupon, the trial court sustained the motion, instructed the jury to return their verdict for defendant and rendered judgment accordingly. Plaintiff has appealed.

Under four points in his brief appellant says the court erred in directing a verdict for appellee because from the evidence as a whole: (1) "reasonable minds might have differed as to whether or not plain-

tiff's damages were the result of an unprecedented rain"; (2) "the jury could have concluded that by the exercise of diligence and care the defendant could have foreseen that such a flood as caused plaintiff's damages might occur"; (3) "even if the flood complained of was extraordinary and unprecedented, but if the defendant negligently failed to construct and maintain sufficient drainage structures under its railroad to allow the flood waters to freely pass under same and this negligence concurred with the unprecedented flood to cause plaintiff's damage, the defendant would still be liable for such damage"; and (4) "plaintiff had a right to have the question of whether or not defendant was negligent in allowing the rock, ballast, gravel, dirt and other substances deposited on plaintiff's land by the flood waters to remain on said land until it was too late for plaintiff to plant and harvest crops on said land for the year 1945." On the other hand, appellee says in effect that the trial court did not err in directing the verdict, among other reasons, because there was no evidence that it was guilty of actionable negligence in either of the particulars charged and because its affirmative defenses were conclusively established by the undisputed testimony.

 It is elemental that when a case is tried before a jury the duty rests upon the trial judge to submit to the jury for its determination all ultimate, controlling issues of fact raised by the pleadings and tendered by the evidence. An issue of fact is tendered by the evidence when there is a dispute in the material testimony relating to such issue or when reasonable minds may differ in the ultimate conclusions of fact to be drawn from the undisputed evidence with respect thereto. But when there is no evidence tendering an issue essential to recovery, or when the competent testimony as a whole relating to one or more of the controlling issues is without any substantial dispute and is such that reasonable minds may not differ in the ultimate conclusions of fact to be drawn therefrom, it becomes the duty of the trial judge to withdraw such a case from the jury or to direct their verdict.

 Art. 6328 of Vernon's Tex.Civ. Stats., enacted in 1876, provides as follows: "In no case shall any railroad company construct a road bed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof." This statute has been the subject of judicial construction many times. In the recent case of Fort Worth & D. C. Ry. Co. v. Kiel, 143 Tex. 601, 187 S.W.2d 371, 373, the Supreme Court, in a restatement of the law applicable thereto, said:

"If a structure placed over a stream does not obstruct the natural and ordinary flow of water of the stream, and an extraordinary and unprecedented flood occurs, of such a size as had not been known or heard of before, and which a person of ordinary care and prudence, under the circumstances, could not have foreseen or anticipated, no damage can be recovered for the injury caused by the extraordinary and unprecedented flood. Houston & T. C. R. Co. v. Walsh, Tex.Civ.App., 183 S.W. 18; Sabine & E. T. R. Co. v. Broussard, 69 Tex. 617, 7 S.W. 374; Gulf, C. & S. F. Ry. Co. v. Holliday, 65 Tex. 512; International & G. N. R. Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744; Houston & T. C. Ry. Co. v. Fowler, 56 Tex. 452; Gulf, C. & S. F. Ry.. Co. v. Pomeroy, supra [67 Tex. 498, 3 S.W. 722].

"The rule of nonliability of a railway company or person for damages caused by an extraordinary and unprecedented flood is subject to the exception that negligence in constructing and maintaining a structure, concurring with an extraordinary and unprecedented flood and causing damage to another, makes the railway company or person liable for damages, notwithstanding the fact that the flood was extraordinary and unprecedented. 1 Tex.Jur. p. 700, § 5, and cases cited in footnotes; see also 1 Tex. Jur., p. 703, § 8; Galveston H. & S. A. Ry. Co. v. Riggs, Tex.Civ.App., 107 S.W. 589, 591; Id., 101 Tex. 522, 109 S.W. 864."

Twenty witnesses testified in this case. However, we find no substantial dispute in any of the voluminous testimony. Hence, in our opinion, a correct disposition of the

appeal turns primarily upon whether or not reasonable minds might differ in the ultimate conclusions of fact to be drawn from the undisputed evidence relating to one or more of the controlling issues raised by the pleadings of the parties.

Appellee's right-of-way extends across Cow Bayou valley in a north-south direction, the creek flowing from west to east and emptying into the Brazos River. Its embankment, tracks and tressel were constructed by the San Antonio & Aransas Pass Ry. Co. (hereafter referred to as the railroad company) in the year 1889. As originally constructed, the embankment on each side of the tressel extended from hill to hill, a distance of approximately 4000 feet, varying in height to a maximum of approximately 9 feet, the tressel over the stream being 1390 feet in length. About ten years later there were heavy rains in that vicinity which caused considerable rise in the waters of Cow Bayou, resulting in litigation between the railroad company and adjoining property owners. See: San Antonio & A. P. Ry. Co. v. Kiersey, 98 Tex. 590, 86 S.W. 744.

In the early part of the year 1913, acting in cooperation with the adjoining landowners, the railroad company deepened and widened the channel of Cow Bayou creek, constructed a steel girder 100 feet in length over the stream and filled in a part of the embankment at each end of its tressel. Shortly after these changes had been effected there was a flood of greater magnitude than the prior overflows of 1899 and 1900, causing the railroad tracks to become inundated and portions of the embankment at each end of the tressel to be washed out. After the 1913 flood the railroad company raised its embankment, tracks, tressel and bridge about five feet to a height of 1.4 of a foot above the highest water mark of this flood and refilled a part of the washed out embankment at each end of its tressel. In the latter part of 1944, appellee again filled in a portion of its tressel on each side of the main channel, filling about 192 feet on the north side and 119 feet on the south side thereof and thereby reduced the length of the tressel to about 400 feet. From the undisputed testimony of each of the four civil engineers who testified on behalf of appellee it appears that these fills and refills were made in accordance with the best engineering skill and practice in common use over the country generally; that according to a U. S. Government Geological Map of the Cow Bayou water shed and what is known as "Tolbert's Formula," which has been recognized and approved as a scientific standard among civil engineers for the past 30 years, only 2748 square feet of drainage area would have been required under appellee's bridge and tressel for the proper passage of normal flood waters; and that 4458 square feet of drainage area was actually left under appellee's bridge and tressel for drainage purposes after the fills and refills of the embankment and tressel had been finally completed.

Appellant had rented certain land in the Cow Bayou valley continuously from 1931 to and including the year 1945, 55 acres thereof being situated immediately east of appellee's tracks, the southwest corner of the 55 acres being about 1000 feet north of the main channel of the stream. He paid and agreed to pay as rental therefor one-third of the grain and one-fourth of the cotton produced on said land. He had properly prepared the 55 acres for planting and had planted about 20 acres to cotton when on April 21, 1945, as a result of heavy rainfall, the flood waters of Cow Bayou flowed over appellee's embankment and tracks, washing the rails, cross-ties and large quantities of rock and gravel from appellee's embankment onto his land. It appears from the undisputed testimony of numerous disinterested witnesses that this rainfall was unusual and extraordinary in several respects. Descending in a deluge of "cloudburst" proportions, 11.4 inches of rain fell in the water shed within a period of two hours and forty-five minutes. As a result of this unprecedented rainfall the waters of Cow Bayou rose in "rolls and waves" as high as two feet with such destructive force as to wash a heavy truck and six-wheel trailer from a highway in that vicinity, washing out numerous highway bridges, including a steel span bridge 240 feet in length which had withstood all previous floods for more than forty years. The flood waters rose higher at the point where Cow Bayou intersects appellee's right-of-way

than had ever been known or heard of by the oldest settlers in that community, being higher by at least three and one-half feet than the highest previous record in 1913.

In the course of the flood the rails in appellee's tracks were broken or separated and, with cross-ties attached, were deposited on appellant's 55 acres of land in a "V" shape, the apex thereof extending for a distance of approximately 1000 feet from appellee's right-of-way. Large quantities of rock ranging in size from that of a man to that of a man's fist, were washed from the north abutment of the tressel and such rock, together with ballast, gravel and dirt from appellee's embankment, were deposited over appellant's 55 acres. Within two weeks after the flood appellee had completed arrangements for the removal of its property from appellant's land as soon as possible, but on account of the wet condition of the ground it was not practicable to remove any of the substances so deposited until about thirty days after the flood and the removal of its rails, cross-ties and the large rocks was not completed until the latter part of June. The surface area of the 55 acres was somewhat bowl-shaped, the elevation being higher on each side thereof than in the center. Having been covered with fifteen feet of water by the flood, the ground remained too wet to cultivate or plow, according to the testimony of appellant, until the month of September. Appellant testified in substance that he would have planted the 55 acres to cotton and he also testified as to the net profits he probably would have derived from the crop of cotton in 1945 had it not been for the flood.

Appellant frankly states in his brief that he "did not offer any testimony showing that there had ever been a flood in Cow Bayou as high as the 1945 flood." He also states in his brief that appellee "proved by a number of witnesses living near Cow Bayou that they had been familiar with the stream for a number of years, and that the 1913 flood was the highest flood they had ever heard of up to that time and that the 1945 flood was higher than the 1913 flood and was the highest flood they had ever heard of on said creek." Any attempt to set forth in detail all of the testimony relied upon by the respective parties, or the able arguments of counsel with respect thereto, would require this opinion to be extended far beyond the length of propriety. Therefore, without further statement from the record, it must suffice to say that after carefully considering all of the evidence in the light most favorable to the earnest contentions of appellant we have concluded that appellee is not legally liable for the damages herein sought for reasons which we shall briefly note.

It is well settled that negligence is never presumed from the mere happening of an occurrence. In order to recover damages resulting from an event there must be some evidence tending to show the existence of all the component fact elements necessary to constitute actionable negligence on the part of the person sued or there must be proof of sufficient circumstances from which these essential fact elements may reasonably be inferred. Davis v. Castile, Tex.Com.App., 257 S.W. 870; Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3; Kelley v. Burlington Rock Island R. Co., Tex.Civ.App., 100 S.W.2d 164 (error refused); Mauk v. Texas Pipe Line Co., Tex.Civ.App., 93 S.W.2d 820; Carter v. Simmons, Tex. Civ. App., 178 S.W.2d 743, pts. 7, 8 and 9.

We find no evidence in this case showing or tending to show that the drainage structures under appellee's railroad tracks at the time of this flood were insufficient to allow the normal flood waters of Cow Bayou to pass freely under the same. We see no reason to discredit the undisputed testimony of the four civil engineers who testified directly as qualified experts that in their opinion such structures were sufficient for that purpose. But if their opinion evidence be completely ignored, then there was no testimony that less than 4458 square feet of drainage area was under appellee's bridge and tressel or that more than 2748 square feet of drainage area was reasonably required for the proper passage of normal flood waters under its tracks.

Reasonable minds might well infer from the evidence as a whole that appellee's agents, in the exercise of extreme diligence, care and sagacity, could have foreseen that

such a flood as caused appellant's damages might possibly occur. Indeed, it may be said upon the highest authority that "with God all things are possible." It is also said frequently in a light vein that no one other than a "new-comer" or fool will predict the vagaries of Texian weather. But these are not the proper criteria by which to determine appellee's legal liability for the damages here sought. The hypothetical man of the common law is not an extremist. He is neither overly cautious nor capricious, neither sage nor simpleton, but is the average good citizen of ordinary care and prudence. He does not order his conduct upon the hypothesis of mere possibilities as distinguished from reasonable probabilities. In the law of negligence the proper standard of conduct is the exercise of that degree of diligence, care and foresight which an ordinarily prudent person would exercise under the same or similar circumstances. Consequently, the real inquiry before us in this case is not whether appellee, in the exercise of extreme diligence, could have foreseen the possibility of the occurrence complained of, but is rather whether appellee was negligent, under all the facts and attendant circumstances as they existed prior to the occurrence, in failing to anticipate and guard against the consequences of the flood which actually occurred. In our opinion the evidence as a whole was and is completely lacking in probative force for that purpose and is wholly insufficient to form the basis for a legal inference of actionable negligence on the part of appellee in any of the particulars alleged. Since the flood with which we are dealing was admittedly higher and of greater proportions than had ever been known or heard of on Cow Bayou, we think under all the evidence it must be held as a matter of law that appellee could not be required in the exercise of due diligence and care to anticipate or guard against the consequences of such event, which in legal contemplation amounted to an "Act of God." Houston & T. C. Ry. Co. v. Fowler, 56 Tex. 452; Galveston, H. & S. A. Ry. Co. v. Crier, 45 Tex.Civ.App. 434, 100 S.W. 1177 (error refused); Gulf C. & S. F. Ry. Co. v. Texas Star Four Mills, Tex.Civ. App., 143 S.W. 1179; American Brewing Ass'n v. Talbot, 141 Mo. 674, 42 S.W. 679, 64 Am.St.Rep. 538; Merchants Ice & Cold Storage Co. v. United Produce Co., 279 Ky. 519, 131 S.W.2d 469.

Moreover, it is certain beyond any shadow of doubt that the moving and efficient cause of appellant's claimed damages was in fact and in law the rapid flow of flood waters down Cow Bayou. But for the flood no damage would have been sustained. And, since appellant's land was on the down-stream side of appellee's right-of-way, it is axiomatic that the flood would necessarily have caused damage to appellant's land and crops even though there had been no railroad embankment or artificial drainage structures in that vicinity. It is equally certain, we think, that the one and only cause of the flood and ensuing overflow of appellee's embankment was such unusual rainfall as had never been known or heard of before that time by the oldest inhabitants of that community. Hence, we cannot perceive how reasonable minds could differ in concluding from the evidence as a whole that appellant's damages resulted directly and solely from an extraordinary and unprecedented rainfall and corresponding flood.

If appellee was not legally liable for the injury and damages resulting from the flood and overflow, then we do not see how its failure to remove the rails, crossties and large rocks from appellant's land sooner than it did could involve the breach of any legal duty it might have owed to appellant. Where there is no breach of legal duty there is no negligence. Furthermore, under all the testimony it affirmatively appears that appellant could not have planted a crop of cotton on account of the wet condition of his ground until it was too late to do so, even though all the substances deposited on his land by the overflow had been removed therefrom immediately.

Because we have concluded that the trial court did not err in directing a verdict for appellee, the judgment appealed from is affirmed.