**MEIER et al. v. THOMPSON.**

No. 3007.

Court of Civil Appeals of Texas.
Waco.

April 10, 1952.

Rehearing Denied May 8, 1952.

494

. Dodson & Reagan, Marlin, for appellants.

Taylor & Dickens, Marlin, Hutcheson, Taliaferro & Hutcheson, Houston, for appellee.

TIREY, Justice.

Appellants brought this suit against defendant railroad company for the purpose of requiring it to put in another crossing so that they could get from the east to the west side of their land. They also asked for certain damages resulting to their farm because of the acts of the railroad company in allowing surface waters to accumulate and stand on their land. They also asked for a mandatory injunction requiring the defendant to provide such crossing and in the alternative they asked and prayed that they be allowed to have another crossing at their expense and maintenance and that defendant be required to abate the nuisance caused by improper drainage of surface waters on their land. The railroad company presented many special exceptions to the appellants' pleading, entered a plea of not guilty, a general denial, and specially pleaded the five-year statute of limitation. At the close of the testimony defendant seasonably presented its motion for instructed verdict, which was overruled.

The jury in its verdict found substantially that the road immediately west of the crossing of defendant's railroad and which plaintiffs used in reaching the part of the farm west of the railroad becomes impassable for farm machinery after each heavy rain, and that such condition constitutes a temporary nuisance and that such temporary nuisance was proximately caused by the construction and maintenance by the railroad of a bridge immediately north of the crossing located on plaintiffs' land and that such temporary nuisance could be abated by constructing another crossing on plaintiffs' land on higher ground north of the present crossing, and that the condition of said road will recur after each heavy rain; that it is impractical for plaintiffs to reach the part of the land west of the railroad with farm machinery by the use of any crossing located north or south of plaintiffs' land; that plaintiffs were prevented in April, 1949, by the condition of the road immediately west of the crossing, from reaching the part of the farm west of the railroad on which they had planted cotton for approximately ten days after the land on which cotton was growing was dry enough to cultivate and that the condition of the road west of the railroad was proximately caused by construction and maintenance of the railroad company of the bridge immediately

north of the crossing and that it became necessary for plaintiffs to replant the cotton that had been planted on said land because of the delay in reaching said land by reason of the condition of the road immediately west of the crossing; that the sum of $255 would reasonably compensate plaintiffs for having had to replant the cotton on said land; that Guy A. Thompson, trustee for the railroad company, and his predecessors in title, have held peaceable, continuous and adverse possession of the railroad right of way over the 363 acre and the 595.9 acre tracts of land for a period of more than five years before the commencement of this suit and that plaintiffs' property was not fenced at the time this suit was filed and that plaintiffs' property had not been fenced for more than ten years prior to the filing of this suit; that there is a crossing on plaintiffs' property less than 1½ miles distant from where plaintiffs now seek to establish a crossing; that plaintiffs' 363 and 595.9 acre tracts of land were not fenced immediately before the railroad was constructed through said property during the year 1900; that the natural drainage of plaintiffs' property is from the northeasterly to a southwesterly direction across defendant's railroad track; that the crossing on plaintiffs' land at the present time was constructed under a contract by Jas. A. Baker, receiver of the railroad, predecessor in title to Guy A. Thompson, trustee, and Otto Meier, predecessor in title and father of the plaintiffs, during the year 1912, and that the present crossing on plaintiffs' land was constructed at that location at the request of plaintiffs' predecessor in title; that the accumulation of surface waters on plaintiffs' land west of the bridge on defendant's property is due to the naturally low condition that existed on said property and to the natural flow of surface waters according to the lay of the land in that vicinity; that plaintiffs could by the erection of drains have turned the water off from said low land immediately west of the crossing in controversy and that the plaintiffs failed to exercise ordinary care to erect drains which would have turned the water off from the land immediately west of the crossing in controversy and that the failure to exercise ordinary care was a proximate cause of the damage sustained by the plaintiffs; that the plaintiffs' property, consisting of two tracts, one of 363 acres and the other 595.9 acres, had remained unfenced for ten years immediately preceding the filing of this suit; that the plaintiffs could have, by erecting a roadway across the low land near the culvert on plaintiffs' property at a cost not to exceed $250, prevented the damages to them and that plaintiffs failed to exercise ordinary care to prevent damage to their property; that plaintiffs could not have by the expenditure of not to exceed $250 constructed ditches which would have drained their property and prevented damage to them; that plaintiffs could have by the expenditure of not to exceed $250 constructed ditches which would have diminished any loss or damage to plaintiffs; and that plaintiffs failed to exercise ordinary care to diminish their loss; that plaintiffs' low land on the west side of the culvert on the 363-acre tract of land could not have been drained in a westerly direction; that appellants' land immediately east and immediately west of the culvert on the 363-acre tract of land as it existed on March 4, 1912 was low land; and that the low land on plaintiffs' 363-acre tract of land immediately west of the culvert was lower than the land north, south and west thereof on March 4, 1912; that plaintiffs could not have by the exercise of ordinary care and expenditure of a small amount of money and labor prevented damage to plaintiffs' property, but found that plaintiffs could have lessened their damage by the use of ordinary care and an expenditure of a small amount of money and labor, and that plaintiffs could have lessened their damage against the defendant by the use of ordinary care and the expenditure of the sum of $200, and further found that the plaintiffs could have, by erecting a roadway across the low land near the culvert on the plaintiffs' 363 acre tract of land, at a cost not to exceed $200, prevented the damage claimed by them, and further found that plaintiffs could have erected a roadway across the low land near the culvert on

plaintiffs' 363-acre tract at an expenditure of not over $250, and further found that by the erection of a roadway across the low land near the culvert on the 363-acre tract of land the plaintiffs could have prevented the damages claimed by them; that the construction and maintenance of the culvert immediately north of the crossing on plaintiffs' 363-acre tract of land was necessary in order to permit surface waters to flow and drain from the east side of defendant's track to the west side thereof on account of the natural lay of the land and the natural flow of the surface waters, and that the natural flow of the surface waters on plaintiffs' 363-acre tract of land is from the northeast to the southwest; that the crossing on the south of plaintiffs' 363-acre tract was constructed according to the agreement between the railroad company and Otto Meier dated March 1, 1912 and that the plaintiffs and their predecessors in title have constantly maintained the crossing on the south side of plaintiffs' 363-acre tract of land since said crossing was constructed; that waters after a heavy rainfall would accumulate and stand on plaintiffs' property at a point west of the culvert on plaintiffs' 363-acre tract, even though no railroad had ever been built across said land now owned by plaintiffs, and further found that Otto Meier on March 4, 1912, for a valuable consideration, did agree to waive and relinquish his right to the construction and maintenance of additional crossings on the 363-acre tract of land, and that the culvert immediately north of the crossing on plaintiffs' 363-acre tract of land was properly constructed. The jury further found that plaintiffs have not by the construction of terraces and ditches on their land east of the railroad caused a greater volume of water to flow through said culvert onto their property on the west side of the railroad track.

Plaintiffs seasonably filed their motion for judgment, which was overruled. The court granted defendant's motion for judgment notwithstanding the verdict and decreed that plaintiffs take nothing against defendant and taxed the costs against plaintiffs. Plaintiffs seasonably perfected their appeal to this court.

Appellants assail the judgment of the court on six grounds. They are substantially: (1) Since appellants have a contractual right to maintain and use the crossing over the railroad, when the construction of a culvert under a railroad caused large quantities of water to flow onto appellants' land, making the road running from the crossing to appellants' farm land impassable after each heavy rain and by reason thereof, the railroad company was liable for damages suffered; (2) that such condition created a temporary nuisance making it impractical for appellants to use the crossing provided and that said temporary nuisance will occur after each heavy rain and that by reason thereof appellants are entitled to have the nuisance abated by constructing a crossing for use of appellants at a point on higher ground where the surface waters will not interfere with such use; (3) that appellants' right to have their damages and to have the nuisance abated by constructing a crossing at a different location would not be affected by the five year statute of limitation; (4, 5 and 6) that notwithstanding the construction of the culvert under the railroad did cause water to drain off according to the natural drainage of the land this fact did not relieve the railroad from liability for damages resulting to appellants from the construction of the culvert although the railroad used ordinary care in so doing, and that appellants were only required to mitigate said nuisance by slight effort and expense. A statement is necessary.

On the first day of March, 1912, Otto Meier, predecessor in title of appellants, entered into the following agreement with the railroad company:

"Whereas, the International & Great Northern Railroad Company did build and construct its line of railway through a certain tract of land now owned by me, under deed dated September 4th, 1911, recorded in Book 58 page 107 of the deed records of the County of Robertson, and whereas I have demanded a crossing to be placed over said line of railway so as to allow access from one part of the land now owned by me to the other part, divided

by said railway, said crossing being about 4 poles south of M P 124 in the S. C. Robertson survey near Eloise switch, and whereas the said International & Great Northern Railway Co. have affected a trade and made an agreement with me concerning said crossing; Now therefore, in consideration of the sum of $50.00 to me in hand paid by the International & Great Northern Railway Co., the receipt of which is hereby acknowledged, I, the said Otto Meier hereby waive and relinquish all right and claim and demands that I may now have, or may have in the future on the said Railway Company for the construction and maintenance of crossing over their said track, where the same crosses my said land, but I do hereby retain the right and privilege of a crossing over said railroad track, which crossing to be maintained by me for all times, at my own expense and cost, and this agreement shall be a covenant running with the land and shall be binding on myself, my heirs and assigns."

Evidence was tendered to the effect that Otto Meier selected the location of the crossing and that the crossing was constructed at the point designated by Meier. There is no claimed defect in the crossing and the crossing constructed was in accordance with the agreement of 1912, and that Meier and his successors in title had constantly used and maintained this crossing since it was constructed. No contention is made by appellants in their pleading that the construction and maintenance of the culvert was not necessary, nor did they ask that it be closed or abated, nor was such issue tendered by the evidence. The parties made the following agreement:

"It is agreed that the International-Great Northern Railroad Company owns the legal and equitable title to the right of way 100 feet wide extending through the property of plaintiffs, said International-Great Northern Railroad Company having acquired said title by purchase, and that said International-Great Northern Railroad Company and its predecessors in title acquired same through a regular chain of title from the sovereignty of the soil down to said International Great Northern Railroad Company, and, that said International Great Northern Railroad Company and its predecessors in title, have owned said property from the 16th day of June, A. D. 1900, to this date, and have claimed, owned and occupied said right of way under recorded deeds, and have paid State, County and School taxes on said property, year by year, within the time required by law for the payment of taxes, from 1900 to date."

As above stated, appellants moved for judgment on the verdict of the jury. They did not in their motion specifically ask the court to disregard any of the jury findings. Their position was that those findings unfavorable to them were merely evidentiary matters and not controlling. We are not in accord with this view, which we will hereinafter discuss briefly. (Since the appellee filed motion for judgment non obstante veredicto after the verdict was returned and the court granted appellee's motion and overruled appellants' motion, we cannot say that appellants' motion was not sufficient under the authority of Traders & General Insurance Co. v. Heath, Tex.Civ. App., 197 S.W.2d 130 (writ ref. n.r.e.) See also Rule 301, Texas Rules of Civil Procedure.

But appellants contend that "even if the culvert constructed under the railroad just north of appellants' crossing was constructed in such a manner that the water would follow its natural drainage according to the slope of the land, and even if it was properly constructed from a mechanical standpoint, still the railroad company would be liable for any damage caused by turning the water onto appellants' land west of the railroad, and thereby creating a nuisance which seriously interfered with appellants' use of its crossing. We think it should be borne in mind that the contract by which appellants secured the right to maintain a crossing over appellee's track was made in March 1912. At that time the railroad had

been constructed for more than twelve years and no culvert had been placed under the tracks at or near this point and the culvert was not constructed until 1917 or 1918, some five or six years after the contract was made. Certainly Otto Meier, who made the contract with the railroad company, could not anticipate that the railroad company would later decide to place a culvert under its track, and destroy the use of the crossing which the railroad company agreed for him to maintain at the point." We are not in accord with these views for reasons hereinafter briefly stated.

■ Under the pleadings and the uncontradicted evidence our view is that the appellants' cause of action, if any they had, was barred by the five year statute of limitation as embraced in Art. 5509, Vernon's Ann.Civ.Stats. Pertinent to the plea of limitation, one of appellants, E. G. Meier, testified in part:

" * * * you say the water accumulated west of this culvert in 1945? A. That is right.

"Q. Had it accumulated there before that time? A. That is right.

"Q. It has been accumulating there ever since you have known the property, hasn't it? A. Yes, that is right. * * *

"Q. Now there is nothing wrong with this crossing across the railroad track—you have kept that in repair since 1912, haven't you? A. That is right. * * *

"Q. The water has been accumulating in that low place east and west of the railroad to some extent to your knowledge since 1912? A. That is right. No, not since 1912, but since they opened that culvert. Before 1917 or 1918 the water did not run through there. How could it when the railroad blocked it up on the east side?

"Q. But it has been accumulating in there to your knowledge since 1917? A. That is right, 1917 or 1918. * * *

"Q. I understood you dug a ditch in 1936 from somewhere opposite this crossing. Where did that ditch begin? A. Right at this culvert here. * * *

"Q. I understood you have been digging ditches here for 20 years. Will you please tell the jury when it was you first dug a ditch in that vicinity. A. I don't know the year exactly. I began digging them 20 years ago. I started operating the farm in 1927— that is about right.

"Q. What was the purpose of digging a ditch there in 1927? A. Trying to save this land here * * *

"Q. Did you dig it here? A. I put a dump there to try to cross that.

"Q. In 1927 you put a dump there so you could get across this low land, and dug a ditch here so it would keep the land from washing? A. Yes, to hold the water in line and to keep it from going on my land.

"Q. In 1927 you put a dump across the low land? A. That is right.

"Q. How long after that was it before you built the second dump? A. I don't know, several years.

"Q. Four or five? A. Yes.

"Q. Did you dig any other ditches after that? A. Yes, I built the biggest one in 1936. When they built this road I had a man with a maintainer help me * * *

"Q. What was the purpose of those ditches? A. To try to get the water away from there.

"Q. They were dug for the purpose of aiding you in getting to your property over here? A. That is right. * * *

"Q. They were asking about the condition of this land over there and the trouble with regard to your road, if the water didn't still stand there since this culvert was built, why was it up until 1943 or 1944 that you could get by with it? * * * From 1917 or 1918, when this culvert was built, what kind of equipment did you use on that farm? A. Mules and cultivators and turning plows and middle busters.

"Q. With that kind of equipment were you or not able to get through this boggy ground there? A. That is right. * * *

"Q. Up to that time you were able to get through there with your equipment? A. That is right, with my mules I was able to get through."

(We have previously set out the agreement of the parties as to the railroad's title, possession of the right of way, and the payment of all taxes thereon.) It is our view that this testimony on behalf of appellants brings the question of limitation squarely within the rule announced by this court in McDaniel v. Burlington-Rock Island R. Co., Tex.Civ.App., 200 S.W.2d 724, and authorities there collated.

■ Moreover, Art. 6328, Vernon's Ann.Civ.Stats. was in force and effect at the time Meier made his contract with the railroad company and such article provides: "In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof." Needless to say that the railroad company and Otto Meier were charged with knowing the law as it existed at the time the contract was made and the statutory duty thus imposed upon defendant railroad necessarily implied a continuing obligation on the part of the railroad to maintain its roadbed in accordance with the provisions of this statute. See Burlington-Rock Island R. Co. v. Newsom, Tex.Civ.App., 219 S.W.2d 129, points 3 and 4 on page 132. See also Ft. Worth & D. C. R. Co. v. Kiel, 143 Tex. 601, 187 S.W.2d 371, point on page 373. The evidence tendered is without dispute that the culvert was constructed in compliance with the foregoing provision of the statute and no negligence is charged in the construction or maintenance of the culvert. It is an elementary principle of the law that negligence is a failure to observe a legal duty. It is our view that the facts here are without dispute that the railroad complied with its statutory duty in constructing the culvert so as to drain the surface waters in their natural flow and in so doing it did not breach its duty to appellants. Absent a breach of duty in the construction of the culvert or its maintenance there was no negligence, and there being no negligence there is and was no liability on the part of the railroad company to appellants. This statement of the general rule is found in International & G. N. R. Co. v. Vallejo, 102 Tex. 70, 113 S.W. 4, point on page 5. See also Lancaster v. Hall, Tex.Civ.App., 277 S.W. 776; Missouri K. & T. R. Co. v. Saunders, 101 Tex. 255, 106 S.W. 321. See also 30 Tex.Jur. 649, sec. 3, and cases there collated, and Lewis v. Texas & N. O. R. Co., Tex.Civ.App., 199 S.W.2d 185, points 6 and 10 (writ ref. n.r.e.).

■ Now returning to appellee's motion for judgment non obstante veredicto, since the evidence is without dispute that the accumulation of surface waters on appellants' land west of the culvert is due to the naturally low condition that exists on said property and to the natural flow of surface waters according to the lay of the land in that vicinity, it was the trial court's duty to disregard the findings of the jury favorable to appellants and grant appellee's motion for judgment non obstante veredicto; otherwise, absent the application of the five year statute of limitation, the verdict of the jury was in conflict and it would have been the duty of the trial court to grant a new trial. See Fort Worth & D. C. R. Co. v. Kiel, supra.

■ Moreover, Art. 7589, Vernon's Ann. Civ.Stats., provides in effect that it shall be unlawful for any person to divert the natural flow of surface waters or to impound the same in any manner to damage the property of another, and that in all such cases the injured party shall have remedies, both at law and in equity. That was the well established common law in this state prior to the enactment of the statute, the provisions thereof being applicable to municipalities as well as to private corporations and individuals. See Falls County v. Kluck, Tex.Civ.App., 199 S.W.2d 704, opinion by this court, point 1. It is obvious that the railroad company's duty was clear in respect to the foregoing statutory provisions. Absent a violation of one or more of the duties imposed by the foregoing statutory provisions, appellants had no cause of action in this behalf. Burlington-Rock Island R. Co. v. Newsom, supra, 219 S.W.2d on page 132; points 3 and 4; also same case Tex.Civ.App., 239 S.W.2d 734.

It seems clear to us that under the pleadings and the undisputed evidence, it was the trial court's duty to grant appellee's motion for judgment non obstante veredicto and enter a take nothing judgment, which was done in this case, and his judgment in so doing is affirmed.

It follows that all points of appellants are overruled.

The judgment of the trial court is affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.