### CARTER v. SIMMONS et al.
#### No. 2570.

Court of Civil Appeals of Texas. Waco.
Feb. 18, 1944.

Rehearing Denied March 9, 1944.

Bryant & Williford, of Wortham, for appellant.

Bowlen Bond, of Fairfield, for appellees.

HALE, Justice.

F. P. Simmons and his mother, Mrs. Kate Simmons, sued Barney Carter and Silver Pine Oil Company for damages on account of the death of ten head of cattle. Plaintiffs alleged that they had executed oil and gas leases covering 48⅝ acres of their land; that defendants had drilled two producing wells and erected some storage tanks on the leased premises and were storing oil from the wells in such tanks; that plaintiffs were also using the premises for grazing purposes and their cattle had died as a direct result of drinking crude oil which defendants negligently permitted to escape from the storage tanks. They predicated their right of recovery solely upon the ground that their loss was proximately caused by the negligence of the defendants in overflowing the storage tanks during the months of January and March of 1942.

Defendants answered with special exceptions, a general denial and affirmatively pleaded the leases under which Carter

claimed he was operating the premises in a careful and prudent manner as provided for in the leases and as required by the Railroad Commission of the State of Texas. They further alleged that plaintiffs were guilty of contributory negligence in permitting their cattle to graze upon that part of the leased premises where the wells were being operated, thus making it possible for their cattle to get to the oil which necessarily accumulated in the slush pits and fire walls adjoining . the producing wells.

The case was tried before the court without a jury and resulted in judgment dismissing Silver Pine Oil Company from the suit and awarding a recovery against Carter in favor of Mrs. Simmons for $50 and in favor of F. P. Simmons for $295. No findings of fact or conclusions of law were made by the trial court other than the general recitation in the judgment that the court was of the opinion the law and facts were with plaintiffs. Carter has appealed from the judgment against him upon the contention that (1) the evidence was insufficient as a matter of law to show the claimed loss was proximately caused by his negligence in permitting oil to escape from the storage tanks, and (2) the evidence showed conclusively the plaintiffs were guilty of contributory negligence in permitting the cattle to graze on that part of the leased premises where the wells were being operated.

The undisputed evidence discloses that on January 25, 1940, appellees entered into a written oil and gas lease with McNeill Petroleum Company by the terms of which they "granted, demised, leased and let" 48% acres of land therein described unto the lessee, with the exclusive right to prospect, mine, operate, produce, store and remove therefrom oil and petroleum products, together with the necessary rights-of-way, easements and servitude for such purposes. The consideration for the lease was $10 cash and the obligation of the lessee to begin and prosecute certain drilling operations and to pay to lessors as royalty ⅛ of all oil produced from the leased premises. What is known as well No. 1 was drilled under this lease and oil was discovered in paying quantities. Thereafter this lease was terminated, except as to ten acres upon which well No. 1 was located, and on January 12, 1941, appellees entered into a written oil and gas lease by the terms of which they leased the 38% acres to appellant for

substantially the same consideration and with practically the same exclusive rights as recited in the original lease to McNeill Petroleum Company. Appellant then drilled what is known as well No. 2 on the 38% acre tract and discovered oil in paying quantities. In the meantime, appellant had acquired from McNeill Petroleum Company by written assignment dated February 26, 1940, an undivided three-fourths interest in its leasehold estate from appellees. Each of the two wells had near it at all times what is known as a slush pit and a flow tank, both of which were necessary to the continuous and proper operation of the leases. Some time after both wells had been developed, four storage tanks were erected between the two wells for the purpose of storing oil from the leases and from other wells being operated by appellant in that vicinity. After the storage tanks had been erected, what is known as a fire wall was placed around them. Appellant operated both wells and maintained the storage tanks on the leased premises up to the time of trial. Appellees knew of the wells, the location and condition of each of the slush pits, were familiar with the manner in which the leases had been developed, and with such knowledge they permitted about seventy head of cattle to graze in the pasture covered by the leases during the months of January and March of 1942.

■ In order to entitle appellees to any recovery in this case it was necessary for them to show by a preponderence of the competent, legal evidence (1) that appellant permitted the storage tanks on the leased premises to overflow at some time during the months of January or March of 1942, (2) that such conduct on the part of appellant constituted negligence, and (3) that their cattle drank from the crude oil which appellant had negligently permitted to escape from the overflowed storage tanks and died as a proximate result thereof. In passing upon the sufficiency of the evidence to raise any or all of these essential issues, it is the duty of this court to view the evidence as a whole and all reasonable inferences and deductions that may be drawn therefrom in the most favorable light from the standpoint of appellees. When thus viewed if the evidence raised each of these issues then this court can not properly set aside or ignore any of the implied findings of the trial court with respect thereto unless such findings or some of them are so manifestly against the overwhelming

weight and preponderance of the testimony as clearly to be wrong.

Whether the storage tanks did or did not overflow at any time during January or March of 1942 was a disputed fact issue under the testimony. Therefore, regardless of what this court might think as to the preponderance of the evidence on such issue, we must presume in support of the trial court's judgment that the storage tanks did overflow during both months because we can not say that such implied findings are so clearly against the overwhelming weight of the credible testimony as manifestly to be wrong. But that fact alone did not constitute negligence per se. As we view the record before us the doctrine of res ipsa loquitur has no application here. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659; Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W.2d 636, points 1-3. In order to establish negligence in this case it was necessary to show that the act of appellant in permitting the storage tanks to overflow involved the breach of some legal duty which he owed to appellees under the existing circumstances. Such negligence cannot be presumed; and unless there was proof of the same and proof that such negligence was the proximate cause of the loss complained of, no recovery was authorized. Texas Pacific Coal & Oil Co. v. Wells, Tex.Civ.App., 151 S.W.2d 927; Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660.

Assuming, then, that appellant permitted the storage tanks to overflow during both of the months in controversy, was there any evidence that appellant's conduct in this particular constituted a breach of any duty which he owed to appellees? Under the terms of the leases here involved appellant held the dominant estate and appellees held the servient estate in so much of the leased premises as were reasonably necessary to the oil operations provided for in the leases and each was required under the law to exercise the rights of the estate so held with due regard for the rights of the other. Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, points 1-5 and authorities; Joyner v. R. H. Dearing & Sons, Tex.Civ. App., 112 S.W.2d 1109. All the evidence shows without dispute that the maintenance of slush pits, flow tanks and storage tanks was reasonably necessary to the successful

and continued operation of the two producing wells situated on the leasehold. The total aggregate capacity of the four storage tanks was approximately 1,500 barrels. We find no provision in the extensive terms of either lease contract which could be construed as imposing any obligation upon appellant to fence off the slush pits, flow tanks or storage tanks from the remainder of the leased premises. Furthermore, we find no direct evidence tending to show who overflowed the storage tanks, why or how they were overflowed or wherein such fact constituted any invasion of or disregard for the servient rights of appellees by the owner of the paramount rights under the leasehold. In our opinion, the mere fact that appellant permitted the storage tanks to overflow, without any showing as to what the operating conditions on the leases might have been at such times, could not form the basis for a legal inference that his conduct in this respect constituted negligence on his part or a breach of any duty which he might have owed to appellees under the existing circumstances. Caldwell-Guadalupe Pick-Up Stations v. Gregg, Tex. Civ.App., 276 S.W. 342, points 1 and 2; Id., Tex.Com.App., 286 S.W. 1083; Pitzer & West v. Williamson, Tex.Civ.App., 159 S.W.2d 181, error dismissed.

If it be presumed, however, that appellant was guilty of negligence in permitting the storage tanks to overflow, we think under the evidence as a whole it is equally as probable that some or all of the cattle died by reason of drinking oil from the slush pits as that they died by reason of drinking oil from the overflowed storage tanks. F. P. Simmons testified that on January 3, 1942, two calves died and thereafter eight head of cows and calves died on different dates during January and March; he had seen oil in the slush pits at both wells on numerous occasions before the storage tanks overflowed and knew that the cattle grazing in the pasture had access to the same at all times material to this suit; when he first discovered the two calves that died on January 3, 1942, they were in the corral close to well No. 1 and one-fourth mile from the storage tanks; when he first noticed the other sick cattle they were all near well No. 1 except perhaps two or three head which were near well No. 2; but prior to the time when the storage tanks overflowed he had not lost any cattle as a result of their drinking

crude oil and after the storage tanks overflowed he saw some cattle drink from this oil, although he did not know whether any of these cattle died or not. Appellees introduced a veterinary surgeon who testified that he examined some of the cattle before and some after they had died and that in his opinion their death was caused by drinking crude oil; when he went to see the cattle he noticed the slush pit at one of the wells was full of oil and he saw oil around the storage tanks and in the fire wall; he also noticed that there was no fence around the slush pit and the cattle in the pasture had access to the oil in the slush pit; cattle do not necessarily die as a result of drinking crude oil, some do and some do not, and whether a cow dies or not is in no wise dependent upon the amount of oil she might drink; one cow might drink a gallon of oil and get well and one might drink a quart of the same oil and die therefrom.

If any or all of appellees' cattle did in fact die as a result of drinking oil which necessarily accumulated in the slush pits as an indispensable incident to the operation of either of the producing wells, then we think it is clear that appellant would not be liable to appellees for such loss. Pitzer & West v. Williamson, supra. Whether the oil which any or all of the lost cattle actually drank came in whole or in part from the slush pits or from the overflowed storage tanks is left entirely to conjecture, surmise and speculation under the evidence in this case. No witness claimed to know or attempted to testify what the facts were in this regard. Consequently, in our opinion, appellees wholly failed to discharge the burden resting upon them to show by a preponderance of the evidence that the negligence, if any, of appellant in permitting the storage tanks to overflow was the proximate cause of all or any part of the loss. Mauk v. Texas Pipe Line Co., Tex.Civ.App., 93 S.W.2d 820, error dismissed; Tucker Oil Co. v. Matthews, Tex.Civ.App., 119 S.W.2d 606, points 1-3 authorities.

After carefully considering all the evidence in its most favorable light from the standpoint of appellees, we are forced to the conclusion that the same was insufficient as a matter of law to form the basis for a legal inference of the existence of the ultimate facts essential to impose liability against appellant. It appears that all available evidence has been fairly well developed. Accordingly, that part of the judgment which awarded a recovery in favor of appellees is reversed and judgment is here rendered in favor of appellant.