**Charlotte A. KELLY, Appellant,**

v.

**Donald L. STONE and Erath County Electric Cooperative Association, Appellees.**

**No. 11–94–035–CV.**

Court of Appeals of Texas, Eastland.

April 27, 1995.

Rehearing Overruled June 15, 1995.

Garry Lewellen, McMillan & Lewellen, Stephenville, David Fielding, Tim G. Sralla, Fielding, Barrett & Taylor, Fort Worth, for appellant.

Charles Nichols, Amy Witherite, Russell W. Schell, R. Michael Beene, Schell, Beene & Vaughan, Dallas, for appellees.

McCLOUD, Chief Justice (Retired).

Charlotte A. Kelly sued her employer, Erath County Electric Cooperative Association (Cooperative), and two of its employees, Donald L. Stone who was the general manager of the Cooperative and Stephen McArthur who was the office services division manager of the Cooperative, alleging intentional infliction of emotional distress and assault.[1] The jury found that the Cooperative (through McArthur) committed assault or intentionally inflicted emotional distress on Kelly and awarded compensatory and punitive damages in the amount of $300,000 against the Cooperative. The jury also found that Stone did not intentionally inflict emotional distress on Kelly.

The trial court granted the appellees' motion to disregard jury findings, or, in the alternative, motion for judgment notwith-

---

1. Kelly subsequently dismissed her suit against McArthur.

standing the verdict[2] and ordered that Kelly take nothing in her suit against Stone and the Cooperative. Kelly appeals, and the Cooperative and Stone file cross-points.[3] We affirm.

The Cooperative hired Kelly as the senior billing clerk in 1980. Kelly's duties included handling the billing, checking for billing errors, and managing the accounts receivable. Stone was hired in 1987 as the general manager. Stone hired McArthur in 1988 to manage the "office services division" of the Cooperative. McArthur answered directly to Stone and was responsible for the "inside" operations of the Cooperative.

McArthur and Kelly developed a relationship outside of the Cooperative. Kelly visited in McArthur's home more than once. On one occasion, while Kelly was visiting in McArthur's home, McArthur told Kelly that they were "soul mates" and that they had been together in a past life and belonged together in this life. McArthur made sexual advances toward Kelly on another occasion while Kelly was visiting in McArthur's home.

At the Cooperative, McArthur left books about reincarnation on Kelly's desk. On another occasion, McArthur chased Kelly around a table and "rubb[ed] [her] on the bottom." McArthur also looked up Kelly's dress while she was on a ladder and made lewd comments. During coffee breaks, McArthur told Kelly about sexual problems that he was having with his wife. McArthur called Kelly on a daily basis on her phone intercom and spoke to Kelly for approximately 30 minutes. During these conversations, McArthur told Kelly that he wanted her and her children to move in with him, his wife, and children. McArthur also told Kelly that they were "soul mates." In the fall of 1988, McArthur placed an audiotape on Kelly's desk and told her that "this [was her] copy of the tape." The tape contained a lewd label and lewd songs. We have reviewed the audiotape, and we find that there is nothing on the tape that relates to the business of the Cooperative.

In January of 1990, Kelly told her immediate supervisor, Ruth Boucher, "basically everything" that was going on at work with McArthur. Boucher arranged a meeting between Stone and Kelly to discuss McArthur. Kelly told Stone that McArthur was "obsessed" with her and that McArthur believed that he and Kelly were "soul mates." Kelly also told Stone that she wanted to be left alone so that she could do her work.

After Kelly's meeting with Stone, McArthur did not call Kelly on the intercom "quite as much"; but McArthur stared at Kelly and continued to touch Kelly and to make lewd comments. Kelly resigned her position at the Cooperative as a result of the problems with McArthur. Kelly testified that she and McArthur had never had an extramarital affair. McArthur, who testified by deposition, described in detail an alleged extramarital sexual relationship with Kelly. The jury rejected McArthur's testimony. We will disregard any of McArthur's testimony that is contrary to the jury's finding.

In her first and second points of error, Kelly contends that the trial court erred in disregarding the jury's finding to Question No. 2 and/or granting the judgment n.o.v. because there was sufficient evidence to support the finding that the Cooperative, acting through McArthur, assaulted Kelly or intentionally inflicted severe emotional distress on Kelly.[4] We disagree.

A trial court may render judgment notwithstanding the verdict if a directed ver-

---

2. Stone joined in the motion even though the jury answered the only submitted liability question in his favor.

3. Kelly does not challenge the jury's finding in favor of Stone.

4. Question No. 2 and the jury's answer read in relevant part:

> Question 2: Did Erath County Electric Cooperative (through Stephen McArthur) assault or intentionally inflict severe emotional distress on Charlotte Kelly?
> Answer: Yes (Emphasis added).

dict would have been proper. A trial court may, upon motion and notice, disregard any jury finding on a question that has no support in the evidence. TEX.R.CIV.P. 301. In order to uphold the trial court's judgment n.o.v., we must determine that there is no evidence to support the jury's finding. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). When reviewing a "no evidence" question, we consider only the evidence and the reasonable inferences therefrom that tend to support the jury's findings and disregard all evidence to the contrary. *Mancorp, Inc. v. Culpepper*, supra. If there is more than a scintilla of competent evidence to support the jury's findings, it must be upheld. *Mancorp, Inc. v. Culpepper*, supra at 228.

On the issue of whether the Cooperative (through McArthur) assaulted or intentionally inflicted emotional distress on Kelly, the jury was given the following instructions:

> You are instructed in answering Question No. 2 that an association or corporation acts through its agents and employees and that any act of an agent or employee is considered to be the act of the association or corporation so long as that act was committed in the course and scope of employment. You are further instructed that a person acts within the course and scope of employment if the acts were done within the scope of the general authority given to the employee by the employer. *Furthermore, the acts must have been done in furtherance of the Employer's business, and the acts must have been done to accomplish the job for which the employee was employed.* (Emphasis added).

▇▇▇▇ It is not ordinarily within the scope of an employee's authority to commit an assault on a third person. *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 237 (1952). Assault is usually the expression of personal animosity and is not for the purpose of carrying out the employer's business. *Texas & P. Ry. Co. v. Hagenloh*, supra; *Green v. Jackson*, 674 S.W.2d 395,

398 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.) In general, to impose liability on the employer for the tort of his employee, the act of the employee must fall within the scope of the general authority of the employee in the furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. See *Smith v. M System Food Stores*, 156 Tex. 484, 297 S.W.2d 112, 114 (1957); *Texas & P. Ry. Co. v. Hagenloh*, supra at 239–240; *International & G.N.R. Co. v. Anderson*, 82 Tex. 516, 17 S.W. 1039, 1040 (1891); *Home Telephone & Electric Co. v. Branton*, 7 S.W.2d 627, 629 (Tex.Civ.App.—Eastland 1928), *affm'd*, 23 S.W.2d 294 (Tex.Comm'n App.1930). To be within the scope of employment, "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Smith v. M System Food Stores*, supra.

In *Hagenloh*, the plaintiff worked as a brakeman on the defendant's freight trains. Houghland also worked for the defendant as a special agent. Houghland's duties were to protect the defendant's property, investigate trespasses and claims, and search for missing property. While he was searching for missing jewelry, Houghland confronted the plaintiff. The plaintiff called Houghland a liar, and Houghland struck the plaintiff. The court held that, in striking the plaintiff, Houghland was not acting in furtherance of the defendant's business but was carrying on an enmity that had developed between Houghland and the plaintiff and that Houghland's acts were not for his employer but were personal to Houghland.

In *Tierra Drilling Corporation v. Detmar*, 666 S.W.2d 661, 662 (Tex.App.—Corpus Christi 1984, no writ), the plaintiff was assaulted by his immediate supervisor while the two were eating lunch in the defendant company's trailer. The defendant company challenged the legal and factual sufficiency of the evidence to support the jury's finding that the attack occurred while the assaulting employee was acting in the course and scope of his employment with the defendant company. The court found that the use of force

was in no way related to the defendant's business and that the defendant had never authorized any employee to use force on another employee. The court also found that there was no close relationship between the assault and the performance of the duties of the employee. The court held that, in assaulting the plaintiff, the supervisor was pursuing his own interests.

In *Southwestern Bell Telephone v. Wilson,* 768 S.W.2d 755 (Tex.App.—Corpus Christi 1988, writ den'd), the defendant was held vicariously liable for the wrongful conduct committed by agents of the defendant, which included two attorneys who represented the defendant in collecting an agreed judgment. The plaintiff alleged claims of intentional infliction of emotional distress, assault, and battery in addition to other causes of action. The trial court entered findings of fact that one of the attorneys verbally and physically assaulted and battered the plaintiff during the attempted execution on the plaintiff's property, that the attorney told the plaintiff that he was going to ruin him and put him out of business, and that the attorney repeatedly poked the plaintiff on the chest with his hand and "cussed" him out. *Southwestern Bell Telephone v. Wilson,* supra at 758–759.

The *Wilson* court found that the alleged intentional torts were committed in furtherance of the collection efforts for the defendant's benefit. The court also found that, while there was no evidence that the defendant encouraged or ordered the tortious behavior, the acts were committed for the purpose of accomplishing the mission entrusted to the attorneys as opposed to those cases in which the agent or employee committed a tortious act because of some personal animosity.

Kelly cites *Bushell v. Dean,* 781 S.W.2d 652 (Tex.App.—Austin 1989), *rev'd on other grounds,* 803 S.W.2d 711 (Tex.1991), as support for her contention that McArthur was fulfilling a company purpose while conducting his misdeeds. In *Bushell,* the plaintiff sued her former manager and employer, claiming assault, sexual harassment, and intentional infliction of mental or emotional distress. On appeal, the employer argued that the evidence was legally and factually insufficient to show that the manager's actions were within the course and scope of his employment. The facts showed that, after the plaintiff publicly spurned the manager's desires for her, the manager retaliated by assigning the plaintiff more work and by becoming more demanding as a supervisor. The court found that assigning more work was within the manager's authority and that supervising employees more closely furthers the object for which the manager was hired. *Bushell v. Dean,* supra at 659.

In an effort to show that McArthur was acting within the scope of his duties, Kelly established that McArthur had direct control over the work of the Cooperative's office staff, including Kelly. McArthur was able to implement changes concerning the duties of Kelly. Although McArthur was not Kelly's immediate supervisor, McArthur was "in charge of" the office staff and "could tell anybody what to do." Kelly had daily contact with McArthur because she had to pass directly by McArthur's office whenever she went to the break room or to the rest room.

McArthur was hired to manage and supervise the "office services division" of the Cooperative. McArthur's duties at the Cooperative did not include the use or threat of physical force or physical conduct against employees, nor did Stone ever direct McArthur to assault or inflict emotional distress on Kelly. There is no evidence to show that McArthur's conduct was in the furtherance of the Cooperative's business or for the accomplishment of the object for which McArthur was employed. While a manager can be expected to communicate with his subordinates, McArthur's comments to Kelly about his desires that they belonged together in this life, his comments about his marital problems, and his comments about Kelly's attire were not work related. Additionally, McArthur's assault against Kelly, the daily intercom calls to Kelly, and the audiotape that McArthur gave Kelly were not within

the scope of general authority given to Mc-Arthur by the Cooperative.

When only the evidence supporting the jury's finding is considered, the record clearly shows that McArthur was motivated by his personal obsession and that he pursued his own personal gratification. This was not in the furtherance of the Cooperative's business. Moreover, McArthur turned aside from his duties with the Cooperative to pursue purely personal interests. When he did so, McArthur ceased to act in the course and scope of his employment.

*Bushell* and *Southwestern Bell Telephone* are distinguishable because there was some evidence in those cases that the employee or agent was acting in the course and scope of their employment or agency. Moreover, the agents' actions related to the business of the employer. In *Bushell,* the defendant's employee used his position as a general manager to retaliate against the plaintiff by becoming more demanding as a supervisor. In *Southwestern Bell Telephone,* the attorneys committed the tortious conduct while they were furthering the collection efforts of Southwestern Bell. In this case, there was no close relationship between McArthur's actions and the performance of McArthur's duties with the Cooperative. The other cases cited by Kelly are also distinguishable.

Kelly further contends that the Cooperative should still be liable for McArthur's actions even if the actions were outside the course of employment. Kelly argues that McArthur was aided in accomplishing the tort by the existence of the agency relationship. We measure the sufficiency of the evidence against the instructions given to the jury. The jury was not instructed on this issue.

■ We hold that there was no evidence to support the jury's finding to Question No. 2. Appellant's first and second points of error are overruled.

In her third, fourth, fifth, sixth, and seventh points of error, Kelly defends the issue of damages and the trial court's jurisdiction to consider her claims. Because of our holding in the first and second points of error, we need not address these points of error. See TEX.R.APP.P. 90(a).

In her final point of error, Kelly contends that the trial court erred in allowing the introduction of evidence regarding allegations that Kelly incorrectly entered data relating to her personal electric bill. Kelly argues that specific instances of conduct were used to attack her credibility, which is prohibited by TEX.R.CIV.EVID. 403, 404, and 608.

■ To obtain reversal of a judgment based on error in the admission or exclusion of evidence, the party seeking review must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Because of our holding on the first and second points of error, we hold that, even if the trial court erred in admitting the evidence, such evidence did not cause the rendition of an improper judgment. Appellant's eighth point of error is overruled.

Since all of Kelly's points of error are overruled, we need not address the Cooperative's and Stone's cross-points of error. Rule 90(a).

The judgment of the trial court is affirmed.

McCLOUD, Chief Justice, Retired, Court of Appeals, Eastland, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

WRIGHT, J., not participating.