Dillon v. Payola Production 

















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-161-CV

     LEWIS MICHAEL DILLON AND ANGELA DILLON,
     INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE
     OF THE ESTATE OF MICHAEL DILLON,
                                                                                              Appellants
     v.

     PAYOLA PRODUCTION, INC., ET AL.,
                                                                                              Appellees
 

From the 13th District Court
Navarro County, Texas
Trial Court # 94-00-03909-CV
                                                                                                    

O P I N I O N
                                                                                                    

      Lewis Michael Dillon and Angela Dillon appeal the trial court's granting of a Judgment Non
Obstante Veredicto (JNOV) for Payola Production, Inc. and Terry Westerman (collectively
"Payola"). The Dillons also claim the trial court erred in failing to grant their Motion for
Judgment on the Verdict. Because Payola breached duties to the Dillons and sufficient evidence
supports the jury's verdict, we reverse and render judgment on that verdict.
      In 1987, the Dillons purchased a rural tract of land so that they and their children could enjoy
the benefits of life in the country. Particularly, the Dillons and their children shared an
enthusiasm for riding horses. However, they purchased this tract with a concern as to some old
oil well equipment that remained on the property. Over the years, the Dillons asked Payola to
remove the equipment because the well was not productive and posed a risk of injury. 
Nevertheless, Payola refused the Dillons' requests, maintaining that when the economy turned
favorable it would resume production from the well in question.
      On February 12, 1992, the Dillons' concern regarding this equipment became a realization. 
After coming home from school, ten-year-old Michael asked his father to go riding horses. Lewis
consented and they went for a ride through the surrounding pastures. As they neared the end of
their ride and approached home, Michael's horse started running towards the barn. Fearing that
the horse and his son were heading for the wellhead, Lewis urged his horse on faster to catch
them. When Lewis caught up to Michael's horse, he dove to catch Michael who was starting to
fall from his horse. Nevertheless, Michael's shirt slipped through Lewis' hands. The fall left 
Michael lying bloody and battered on the unused equipment. Although rushed to the hospital and
subsequent emergency surgery, Michael died from massive head wounds and significant internal
injuries.
      Alleging numerous theories of liability, the Dillons brought suit against Payola because of its
failure to remove the oil-well equipment. At trial, the Dillons chose to submit broad negligence
questions. The jury returned a verdict in favor of the Dillons and awarded damages. However,
the trial court granted Payola a JNOV.
      In their first point of error, the Dillons complain the trial court erred in granting Payola's
motion for JNOV because Payola owed a duty to the Dillons to operate the well in a reasonably
prudent manner. We will uphold a trial court's JNOV only if no evidence supports the jury's
verdict. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990); Kelly v. Stone, 898
S.W.2d 924, 927 (Tex. App.—Eastland 1995, writ denied); Edgington v. Maddison, 870 S.W.2d
187, 189 (Tex. App.—Houston [14th Dist.] 1994, no writ); Fisher v. Evans, 853 S.W.2d 839, 841
(Tex. App.—Waco 1993, writ denied). More than a scintilla of evidence exists where the
evidence supporting the verdict, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497,
499 (Tex. 1995). To decide if more than a scintilla of evidence exists, we review only the
evidence supporting the jury's verdict and disregard all evidence and inferences to the contrary. 
Id.; Mancorp, Inc., 802 S.W.2d at 227; Kelly, 898 S.W.2d at 927; Edgington, 870 S.W.2d at 189;
Fisher, 853 S.W.2d at 841. Thus, we must consider the evidence and inferences as they tend to
support the verdict and not with a view toward supporting the judgment. Mancorp, Inc., 802
S.W.2d at 228. When the trial court does not specify its reason for granting a JNOV, the
appellant must show some evidence to support each cause of action defeated by the JNOV motion. 
Gallas v. Car Biz, Inc., 914 S.W.2d 592, 593 (Tex. App.—Dallas 1995, writ denied). In this
case, the trial court did not designate its reason for granting the JNOV to Payola.
      Payola contends in its JNOV motion that it owed no duty to the Dillons because: (1) the
mineral interest owner's rights are superior to the surface owner's; (2) no Railroad Commission
Rule required it to plug this well; (3) no lease or other contract required it to build a fence around
the oil-well equipment; (4) Michael was a trespasser or a licensee; and (5) Michael was engaged
in a recreational activity on its land at the time of the accident.
      The common oil and gas lease is a fee simple determinable estate in the realty. Jupiter Oil
Co. v. Snow, 819 S.W.2d 466, 468 (Tex. 1991); Luckel v. White, 819 S.W.2d 459, 464 (Tex.
1991). It is well settled that the lessee of an oil and gas lease possesses the dominant estate, in that
the lessee may use as much of the surface as is reasonably necessary for production and removal
of oil and gas. Getty Oil Company v. Jones, 470 S.W.2d 618, 621 (Tex. 1971); Humble Oil &
Refining Company v. Williams, 420 S.W.2d 133, 134 (Tex. 1967); Brown v. Lundell, 162 Tex.
84, 344 S.W.2d 863, 865 (1961); Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d
410, 413 (1954); Amerada-Hess Corp. v. Iparrea, 495 S.W.2d 60, 61 (Tex. Civ. App.—El Paso
1973, writ ref'd n.r.e.); Texaco, Inc. v. Spires, 435 S.W.2d 550, 553 (Tex. Civ. App.—Eastland
1968, writ ref'd n.r.e.); Sinclair Prairie Oil Co. v. Perry, 191 S.W.2d 484, 486 (Tex. Civ.
App.—Texarkana 1945, no writ); Carter v. Simmons, 178 S.W.2d 743, 746 (Tex. Civ.
App.—Waco 1944, no writ); Pitzer & West v. Williamson, 159 S.W.2d 181, 182 (Tex. Civ.
App.—Fort Worth 1942, writ dism'd). However, the right to use the surface must be exercised
with due regard for the rights of the owner of the surface estate. Getty Oil Company, 470 S.W.2d
at 621; Brown, 344 S.W.2d at 866; Martin, 271 S.W.2d at 413; Spires, 435 S.W.2d at 553;
Carter, 178 S.W.2d at 746; Williamson, 159 S.W.2d at 182. Furthermore, mere ownership or
possession of the mineral interest does not eradicate every duty owed to the surface owners. See
Brown, 344 S.W.2d at 866 (lessee can be held liable for negligently and unnecessarily damaging
the lessor's land); Spires, 435 S.W.2d at 553 (lessee owes a duty to the surface owner not to
negligently injure the surface owner’ estate); Weaver v. Reed, 303 S.W.2d 808, 810 (Tex. Civ.
App.—Eastland 1957, no writ) (lessee could be liable for damages proximately caused by
negligently leaving a can of pipe lubricant where lessor's cattle could eat it). Thus, Payola's
mineral interest ownership gives it a superior right to use the surface and conduct operations that
are reasonably necessary for the production of oil and gas, but it does not insulate Payola from
liability in each and every circumstance.
      Payola's JNOV motion also asserts that no Railroad Commission Rule creates a duty to the
Dillons to plug the well. The Legislature granted the Railroad Commission the authority to make
rules either general in nature or applicable to particular fields for the prevention of actual waste
of oil or operations in the field that pose a danger to life or property. Tex. Nat. Res. Code Ann.
§ 85.042(b) (Vernon 1993). Rules and orders of the Railroad Commission made under authority
of a statute are considered under the same principles as if they were the acts of the Legislature for
the reason that the power was delegated to the Commission by the Legislature and in that sense
the Commission is the agency of the Legislature. L & G Oil Company v. Railroad Commission,
368 S.W.2d 187, 193 (Tex. 1963). Pursuant to this authority, the Railroad Commission adopted
Rule 14 requiring that plugging operations must begin on each dry or inactive well within a period
of one year after drilling or operations cease and continue with due diligence until plugging is
completed. 16 Tex. Admin. Code § 3.14(b)(2) (West 1988) (Tex. R.R. Comm'n, Plugging). 
For good cause, an extension of a reasonable time may be obtained to delay the plugging of a dry
or inactive well. Id.
      The Railroad Commission's rule-making authority extends beyond the issues of the prevention
of waste and the protection of correlative rights to include the protection of life and property. 
Tex. Nat. Res. Code Ann. § 85.042(b). Additionally, some of the rules enacted by the Railroad
Commission create a duty which will support a cause of action by the surface owner or, in some
cases, the general public. See Gulf Oil Corporation v. Alexander, 291 S.W.2d 792, 795 (Tex.
Civ. App.—Amarillo), writ ref'd n.r.e., 295 S.W.2d 901 (Tex. 1956) (violation of Railroad
Commission Rule provided adjoining landowner a cause of action for pollution of fresh water
supply); Peterson v. Grayce Oil Co., 37 S.W.2d 367, 372 (Tex. Civ. App.—Fort Worth 1931),
aff'd on other grounds, 128 Tex. 550, 98 S.W.2d 781 (1936) (nothing in the Constitution prevents
a Railroad Commission Rule from providing the basis for a private cause of action). Rule 14 is
such an example. Thus, we disagree with Payola's contention that Railroad Commission Rules
cannot provide a duty owed to a private individual.
      Payola argues that we should not find a duty pursuant to Rule 14 because it could have
complied without plugging the well by simply filing for an extension. However, Payola never
applied for an extension. Furthermore, our interpretation of Rule 14 is that an extension is not
a matter of right. Rather an extension is granted if the applicant can satisfy the Railroad
Commission that certain criteria have been met. 16 Tex. Admin. Code § 3.14(b)(2).
      Payola further asserts in its JNOV motion that it owed no duty to build a fence around its
equipment because no lease or other contract required such action. Generally, a lessee owes no
duty to the surface owner to fence its pits, tanks, machinery, etc., to prevent livestock from being
injured thereby. Martin, 271 S.W.2d at 412-13; Satanta Oil Co. v. Henderson, 855 S.W.2d 888,
890 (Tex. App.—El Paso 1993, no writ); Trinity Production Co. v. Bennett, 258 S.W.2d 160, 162
(Tex. Civ. App.—Amarillo 1953, no writ); Baker v. Davis, 211 S.W.2d 246, 247 (Tex. Civ.
App.—Eastland 1948, no writ); Perry, 191 S.W.2d at 486; Williamson, 159 S.W.2d at 182. 
However, these cases are distinguishable from the present one. First and foremost, all the wells
in the cited cases were producing at the time of the respective accidents. Payola had not produced
from its well for over four years prior to the accident. Secondly, the courts in the above cited
cases dealt with potential injury to livestock. This case concerns potential injury to children or
other people. Payola knew that the area surrounding its unproductive well was becoming
increasingly residential and that the potential for injury on its unused equipment likewise
increased. Thus, under certain circumstances, a lessee could owe a duty to fence its area of
operation when activities near the well have ceased and people could be injured by the unused and
unproductive equipment.
      Payola further alleges that Michael was a trespasser when he fell on its unused equipment. 
Presently, the Dillons, as the surface estate owners, were making an appropriate use of their
estate. The status of trespasser, licensee, or invitee does not apply in this case where a surface
owner was reasonably using the surface estate around an area that the mineral owner had not used
for several years.



      Finally, Payola claims that it owed no duty to Michael because he was engaged in a
recreational activity on its land. The Texas Civil Practice & Remedies Code provides in pertinent
part:
If an owner, lessee, or occupant of real property other than agricultural land gives
permission to another to enter the premises for recreation, the owner, lessee, or
occupant, by giving the permission, does not:
(1) assure that the premises are safe for that purpose;
(2) owe to the person to whom permission is granted a greater degree of care than
is owed to a trespasser on the premises; or
(3) assume responsibility or incur liability for any injury to any individual or
property caused by any act of the person to whom permission is granted.

Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c) (Vernon Supp. 1997). However, we find this
statute inapplicable when asserted by a mineral interest owner to defeat claims by the surface
owner. Furthermore, no evidence shows that Payola granted permission for Michael and Lewis
to ride horses around its well.
      In their second point of error, the Dillons assert that the trial court erred by failing to grant
their Motion for Judgment because sufficient evidence supported the jury's verdict. Negligence,
a common law doctrine, consists of three essential elements—a legal duty owed by one party to
another, a breach of that duty, and damages proximately resulting from the breach. El Chico
Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987); Way v. Boy Scouts of America, 856 S.W.2d
230, 233 (Tex. App.—Dallas 1993, writ denied). Duty is the threshold inquiry; a plaintiff must
prove the existence and violation of a duty owed to him or her by the defendant to establish
liability. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995); Poole, 732 S.W.2d
at 311; Way, 856 S.W.2d at 233. The existence of a duty is ultimately a question of law for the
court to decide from the facts surrounding the occurrence in question. Siegler, 899 S.W.2d at
197; Way, 856 S.W.2d at 233-34. In the determination of whether a duty exists, foreseeability
of the risk is the foremost and dominant factor. Poole, 732 S.W.2d at 311. Foreseeability does
not require the party to anticipate a particular accident, but only that the party reasonably
anticipate the general character of the injury. Id. at 313.
      If a party negligently creates a dangerous situation, then it becomes that party's duty to
remedy the situation to prevent injury to others if it is reasonably foreseeable or should be
foreseeable to the party that others in the exercise of their lawful rights may be injured thereby. 
Id. at 311. Thus, an oil and gas lessee has a duty to plug its well when it is foreseeable that it
could harm the surface owner. See Guffey v. Stroud, 16 S.W.2d 527, 529 (Tex. 1929) (an oil well
operator had a duty to plug its well so as to prevent the escape and waste of gas and otherwise
remove the danger of the hole becoming a menace to the surface owner).
      In this case, Payola did not produce from the well on the Dillon's land for over four years. 
During this time, Payola failed to remove its unused equipment or make the well area safe for the
Dillons' use of the surrounding area, even after Lewis requested the equipment's removal. The
photographs of the equipment admitted into evidence depict two pipes running parallel to the
ground in opposite directions from the well and a pipe protruding straight up from the well. 
Edward Ziegler, a petroleum safety consultant, testified regarding the potential hazards of this
equipment as follows:
Just looking at the configuration of this piece of equipment, it clearly would be a tripping
hazard, something somebody could walk into, an impalement hazard if you fell on it,
numerous hazards. You analyze it in a two step process. Do you need it there first of
all? Second of all, is it dangerous? And in this particular situation, it wasn't needed
there, shouldn't have been there, and it certainly was a dangerous hazard.

Ziegler further testified that Payola could have reduced the hazards by putting a fence around the
equipment, building a plywood box over it, or removing the equipment and capping the wellhead.
      These options provided Payola an inexpensive way to reduce the hazards associated with this
non-producing well while not harming the future production capabilities of the well. By failing
to remedy the dangerous situation its unused equipment created, Payola violated its duty to
exercise reasonable care to avoid foreseeable injury to others.


 Poole, 732 S.W.2d at 311. Thus,
we find that the evidence supports the jury's finding that Payola's breach of duty proximately
caused the death of Michael Dillon.


 Crye, 907 S.W.2d at 499; Mancorp, Inc., 802 S.W.2d at
227; Kelly, 898 S.W.2d at 927; Edgington, 870 S.W.2d at 189; Fisher, 853 S.W.2d at 841. 
Therefore, we sustain the Dillons' first and second points.
      Payola brings two cross-points complaining about the trial court's failure to include its
requests in the charge submitted to the jury. In its first cross-point, Payola complains the trial
court erred in not submitting the case to the jury on premises liability issues. The trial court has
great discretion in submitting the jury charge. Rendleman v. Clarke, 909 S.W.2d 56, 60 (Tex.
App.—Houston [14th Dist.] 1995, writ dism'd as moot). This discretion is subject to the
requirement that the questions submitted must control the disposition of the case, be raised by the
pleadings and evidence, and properly submit the disputed issues for the jury's deliberation. Id.
      As stated earlier, the status of trespasser, licensee, or invitee between Payola and Michael
does not apply to the facts of this case. Therefore, no relationship existed at the time of the
accident that would bring Michael within the scope of Payola's duty under a premises liability
theory. Id. The Dillons and Payola are complementary owners of the fee simple, whose
relationship and duties to each other should be governed accordingly.


 Consequently, Payola's
duties did not arise from Michael’s status, but from the duties of ordinary care based on its
creating and leaving a dangerous condition with knowledge that the Dillons would be exposed to
that danger and the probability of injury. Id. Because the pleadings and evidence raised a
negligence cause of action, the trial court did not abuse its discretion in refusing Payola’s request
to submit this case as a premises liability case. Id. Payola's first cross-point is overruled.
      Payola's second cross-point claims the trial court erred in not submitting instructions to the
jury concerning the inherent risks of horseback riding. The requested instruction tracks the
language of section 87.003 of the Civil Practice and Remedies Code, which became effective
September 1, 1995. Tex. Civ. Prac. & Rem. Code Ann. § 87.003 (Vernon Supp. 1997). We
find the trial court did not err in refusing an instruction based on a statute not in existence at the
time of the accident. Even if the requested instruction correctly stated the law at the time of the
accident, this requested instruction was unnecessary to enable the jury to render a verdict because
the dangers of horseback riding are commonly known to the average juror. Paschall v. Peevey,
813 S.W.2d 710, 713-14 (Tex. App.—Austin 1991, writ denied). The second cross-point is
overruled.
      We reverse and render judgment in accordance with the jury's verdict.
 
 
                                                                                 REX D. DAVIS
                                                                                 Chief Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
          (Justice Vance not participating)
Reversed and rendered
Opinion delivered and filed June 18, 1997.
Do not publish